GALVESTON, H. & S. A. RY. CO. v. CITY OF EAGLE PASS. (No. 7496.)*

(Court of Civil Appeals of Texas. San Antonio. Feb. 17, 1926. Rehearing Denied March 24, 1926.)

**1. Appeal and error ⊂⊃1099(4), 1216—Holding by Supreme Court as to construction of instruments held binding on second appeal, and findings on second trial to the contrary are futile.**

Holding by Supreme Court that provisions in deed, contract, and plat could not be construed as dedication to public for street purposes became law of case on second appeal, and findings of trial court on second trial to the contrary were futile.

**2. Appeal and error ⊂⊃1195(4)—Photostatic copies introduced on second trial can be given no greater effect than original plat, held ineffective as dedication on former appeal.**

Where Supreme Court held plat to be ineffective as dedication, and remanded case, photostatic copies of original plat, introduced in second trial, can be given no greater effect than original.

**3. Dedication ⊂⊃19(1), 39 — Public presentation of plat, indicating only intention to dedicate, does not import dedication for street purposes; dedication can no longer be claimed after building of depot on premises with knowledge of all parties interested.**

Presentation of plat, indicating only a prospective intention to dedicate, to commissioners' court, and hanging same in county clerk's office, does not import dedication of land for street purposes, and where railroad company constructed a depot on premises without complaint, and with knowledge of all persons interested, the public and claimants under original owner can no longer claim dedication for street purposes.

**4. Dedication ⊂⊃39—Whether depot was built before or after conveyance to railroad of land claimed to have been dedicated is immaterial, where done with consent of owner and public.**

Whether tract claimed by city to have been dedicated for street purposes was appropriated by railway company for depot before, or after owner conveyed it to company, is immaterial, where appropriation was with consent of public and owner, as it deprived them of right to use property for street purposes, except by exercising power of eminent domain.

**5. Appeal and error ⊂⊃1097(1).**

Where facts shown on second trial do not materially differ from those shown on first trial, holdings of Supreme Court on appeal from first trial become law of case.

Appeal from District Court, Maverick County; Joseph Jones, Judge.

Suit by the City of Eagle Pass against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood, of Houston, W. B. Teagarden, of San Antonio, and David E. Hume, of Eagle Pass, for appellant.

Wray Zuehl and Ben V. King, both of Eagle Pass, and Douglas & Carter, of San Antonio, for appellee.

SMITH, J. This suit was brought by the city of Eagle Pass against the railway company to require it to remove its depot and other buildings from its reservation, so as to permit Main street to be opened up across said reservation, and to open said street thereover. This strip of land has been occupied by the railway company, and used by it for railroad purposes, since the construction of its line thereon in the year 1882. The land was owned in fee simple by John Twohig at the time the railway company entered upon and appropriated it to railroad purposes, but afterwards, in 1884, Twohig conveyed his title therein to the company, together with an undivided one-half interest in a 350-acre tract adjoining the reservation.

The city contends, however, that the particular strip in controversy, embracing the projection of Main street across the reservation, was irrevocably dedicated to the use of the public for street purposes by Twohig, and accepted by the public. It is contended by the city that the fact of such dedication by Twohig is evidenced by certain deeds and contracts, executed in 1884 and 1889, and by certain maps or plats referred to in those several instruments. This is the second appeal in the suit styled as above. 249 S. W. 268; 260 S. W. 841. The facts and issues in the case are fully stated in the reports, to which reference is now made, and need not be restated here. In the first as well as in the last trial, the city of Eagle Pass obtained judgment against the railway company.

In the first appeal this court affirmed the judgment rendered below, in an opinion which disposed of all the issues deemed material to the controversy, and resolved them in support of the judgment. On writ of error granted by the Supreme Court, the Commission of Appeals traversed the opinion of this court and overruled apparently all material holdings therein, leaving nothing upon which the judgment of the trial court could stand. The opinion of the Commission of Appeals, written by Judge German, was not only elaborate, but was thorough and lucid, as well as plain and unmistakable in its import, and, the holdings therein, having been expressly approved by the Supreme Court, point directly to the law of this case in all its essentials. The only task imposed upon this court in this appeal is to determine whether or not the case now made differs in essentials from the case made upon the former appeal.

The case rests upon this fundamental issue: Did the railway company, with Twohig's consent and without the intervention of

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 19, 1926.

an adverse public right, enter into possession and appropriate the premises in controversy to railway purposes? The Supreme Court, speaking through the Commission of Appeals, has for all time resolved this issue in favor of the railway company, so that it would be futile to enter into a lengthy discussion of that question at this time. The company took possession of the "railroad reservation," the property of Twohig, built its railroad and railroad facilities thereon, and put them in operation in 1882, 40 years before the suit was brought.

We think the record shows indubitably that within a year, or two years, at the most, the company constructed a freight depot in Main street as projected across the reservation, but the trial court found that this did not occur prior to 1886, and this finding does not appear to be directly attacked by appellant. But it is certain that the structure was in that street, in 1886, and has been there ever since, in one form and substance or another. It was placed there in Twohig's lifetime and with his knowledge, and, the Supreme Court holds, with his implied consent. Thus says the Supreme Court:

"Appellant had acquired such rights and title to the property, for his own purposes, which were of a public nature, as to prevent any one claiming under Twohig acquiring the right to use such property for street purposes, except in the manner provided by law for the exercise of the power of eminent domain."

[1] It is contended by appellee, and the trial court gave effect to that contention, that expressions used in the deeds and contracts referred to, when construed in connection with the plat therein referred to, constituted a dedication to the public for street purposes of that part of the railroad reservation embraced in the projection of Main street thereover. The Supreme Court has expressly held, however, that the language and provisions in those deeds and contracts cannot be construed as a dedication. That holding became the law of this case, and the subsequent findings of the trial court to the contrary are of course futile. The plat relied upon by appellee for the purpose of showing a dedication was in evidence upon the former trial, and was given that effect in the decision of this court upon the former appeal; but the Supreme Court settled the question to the contrary, and that, too, becomes the law of the case. Upon the last trial the same plat was put in evidence, and given the same effect as before by the trial court; but, as that holding, also, is contrary to the decision of the Supreme Court, it, too, is futile.

[2] It is true that other plats were introduced upon the last trial, but they do not purport to be other than photostatic copies of the original plat, which the Supreme Court held to be ineffectual, as, of course, the copies are, since they can be given no greater effect than the original. These copies show the projection of Main street across the reservation by solid lines, in continuation of similar lines leading up to the reservation, instead of by dotted lines, as in the original. But this slight difference cannot, in view of the Supreme Court decision, be given the effect of a solemn dedication of the property to the use of the public as a street.

[3] Moreover, these copies, as well as the original, were not placed of record. The copies rested for many years in the archives of the railway company and unknown, and therefore of no interest, to the public; and while it is true that the original was presented by Twohig to the commissioners' court of the county, and from 1894 hung in the county clerk's office, this act did not import a dedication, because, even if that character of act could legally effect a dedication, the Supreme Court has held that this plat indicated no more than a prospective intention to dedicate. That intention was not only not pursued, but was effectively defeated by the conduct of the railway company, in promptly and definitely appropriating and consistently thereafter devoting the premises to another public use, without any complaint from, and yet with the knowledge and acquiscence of, the public, the public authorities, and every individual who could possibly have had any interest at stake.

[4] As we construe its decision, the Supreme Court has held that in this state of facts the public, as well as those claiming under Twohig, are cut off from any claim they may have ever had that the use of the premises in controversy had been dedicated to street purposes. It does not appear to be material whether this appropriation was made before or after Twohig conveyed the reservation to the company, since it was done with his consent and that of the public, thus depriving him, and those claiming under him, as well as the public, of the right to "use such property for street purposes, except in the manner provided by law for the exercise of the power of eminent domain."

[5] As the facts shown upon the last trial do not materially differ from those shown on the first, these holdings by the Supreme Court become the law of the case, and settle the controversy in favor of the railway company, so that nothing remains for this court to do but to give effect thereto; the facts apparently being fully developed.

Accordingly, the judgment is reversed, and judgment is here rendered for appellant.