## MALOTT v. CITY OF BROWNSVILLE et al.*
### (No. 7677.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 16, 1927. Rehearing Denied March 16, 1927.)

1. **Bridges ⟐15—Publication by applicant for franchise of notice of ordinance granting franchise to occupy portions of streets for bridge purposes held sufficient.**

Charter of Brownsville does not require that notice of ordinance granting franchise to occupy portions of city streets be published by named officials, and, where publication of ordinance granting franchise for toll bridge was made under direction of mayor of city given before the city commission, fact that it was published by applicant for franchise. held not to affect validity of ordinance, otherwise regular.

2. **Municipal corporations ⟐285 — City of Brownsville held empowered to grant franchise to build and operate bridge over international boundary.**

City of Brownsville held empowered under its charter, in view of its police powers, to grant franchise to build and operate a bridge whether it cross an international border; the city only granting right in and to its streets.

3. **Bridges ⟐12—Property owner and taxpayer held not to allege and show special damage from franchise granting use of streets for international bridge.**

Abutting property owner and taxpayer held under facts not to allege and show special damages growing out of possible exercise of rights under franchise to use portions of streets for international bridge purposes, so as to authorize injunction restraining enforcement of ordinance granting franchise.

4. **Bridges ⟐15—Franchise to use portion of streets for bridge purposes legally enacted and approved by public vote is viewed with favor.**

Franchise to use portion of streets for approaches to international bridge granted by act of municipality and approved by public vote is viewed with favor by the courts, in view of benefits to result therefrom.

5. **Municipal corporations ⟐680, 681(8)—City has no power to appropriate street for private use.**

No city has power to pass to any person entire use of one of its public traveled streets in such way as to destroy its character as a street and cause it to be closed for private use.

### On Motion for Rehearing.

6. **Eminent domain ⟐119(9)—Bridge approach is not additional servitude on public street, so as to require compensation to abutting owner, though access to street is destroyed.**

A bridge approach placed on a public street is not an additional servitude on street, so as to require compensation to abutting owner, though his access to street is destroyed.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Action by C. G. Malott against the City of Brownsville and others. From a judgment for defendants, plaintiff appeals. Affirmed.

C. M. Robarbs and Templeton, Brooks, Napier & Brown, all of San Antonio, for appellant.

H. B. Galbraith, A. B. Cole, R. E. Green, and Graham & Graham, all of Brownsville, for appellees.

COBBS, J. Appellant, as an abutting property owner and taxpayer, sued appellees to restrain the enforcement of an ordinance and to annul the same, which undertook to grant R. B. Creager, appellee, a franchise for the period of 50 years to occupy certain portions of Fourteenth street and of Levee street, in the city of Brownsville, and to construct, maintain, and operate on said parts of said streets piers, abutments, and other works necessary for the construction of the bridge and the landings and approaches thereto, and to construct and maintain thereon telegraph and telephone lines and toll houses and other structures necessary in the operation of said bridge, and restrain the defendants from closing or obstructing

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 11, 1927.

said portions of said streets. The grounds upon which appellant seeks the injunction, as set forth in his pleading, are:

"(1) Notice of the proposed ordinance was not published, as required by the charter; (2) the proposed ordinance was submitted to a vote of the people before it had been finally passed, in violation of the charter, and before any legal publication thereof had been made, and even before completion of the publication of the notice given by Creager; (3) that the action of the city commission in submitting the question to the vote of the people was illegal and unauthorized by the charter, as no ordinance had been finally passed; (4) that the election was illegal and void because not ordered by the governing authority of the city, to wit, the city commission, as required by the city charter; (5) that the act of the city commission, on February 17, 1926, in attempting to pass the ordinance after the proposed ordinance had been submitted to the people, was illegal and void."

And he alleged that it was further void because it was an attempt to take appellant's property for private use and purposes, without condemnation or paying adequate compensation therefor.

Appellee's answer consisted of general demurrer, general and special answer, and pleading the former action of the court in dissolving the previous injunction based upon the same matters, as res judicata of matters set out and involved in this procedure. The court sustained exception to the pleading and dismissed the same. The case was tried by the court on its merits, without a jury, and after a full hearing the court dissolved the injunction and entered judgment for appellee, from which no appeal was prosecuted.

[1] The first proposition urged is that the ordinance itself granting the franchise was void because publication thereof was not made as required. In section 18, concerning the granting of franchises for the use of streets, it was required that the "applicant shall first make application to obtain the consent of the governing authorities, expressed by ordinance, and upon paying such compensation as may be prescribed and upon such conditions as may be provided for by such ordinance before such ordinance, proposing to make any such grant for franchise or privilege to any applicant to use or occupy any street, avenue, alley, or any other public ground belonging to or under the control of the city, shall become effective, publication of such ordinance, as finally proposed to be passed, shall be made in some newspaper published in the city of Brownsville, once a week for three consecutive weeks * * * at the expense of the applicant * * * nor shall any such ordinance take effect * * * until after the expiration of thirty days from the last publication. Pending the time such ordinance may become effective it is hereby made the duty of the governing authority of the city to order an election, if requested to do so by written petition signed by at least ten (10) per cent. of the legally qualified voters as determined by the number of votes cast on the last regular municipal election; at which election the qualified voters of said city shall vote for or against the proposed grant, as set forth in detail by the ordinance conferring the rights and privileges upon the applicant therefor. Such election shall be ordered not less than thirty (30) days nor more than ninety (90) days from the date of filing said petition, and if at said election the majority of the votes cast shall be for the granting of such franchise or privilege, said ordinance and the making of said proposed grant shall thereupon become effective, but if a majority of the votes cast at said election shall be against the granting of such franchise or privilege, such ordinance shall be ineffective and the making of such proposed grant shall be null and void."

The publication of the proposed ordinance was made by R. B. Creager and signed by him alone, but not by any public official. It was published November 28, December 5, and December 12.

Appellant's contention is that by the use of the word "publication," as used in the charter, is meant that some official who had authority must sign and make the publication; that, Mr. Creager having no legal authority to make it so as to bind any one, it was beyond his power to make the contemplated publication, and therefore it was invalid, and the ordinance should have been canceled and annulled because it was not passed in the manner prescribed by the city charter.

The undisputed facts with reference to the passage of the ordinance attempting to grant R. B. Creager the franchise, according to appellant, are these:

"(1) On November 27, 1925, the city commission of the city of Brownsville passed said ordinance undertaking to grant R. B. Creager a toll bridge franchise to the first reading.

"(2) On November 28, R. B. Creager began the publication of a notice which copied this ordinance. This notice was published three times, namely, November 28, December 5, and December 12. This notice was signed by R. B. Creager alone.

"(3) On December 4, certain citizens filed a petition requesting that said ordinance be submitted to a vote of the people.

"(4) On December 18, 1925, the city commission ordered the calling of a special election on January 21, 1926.

"(5) Notice of this election was published in the Brownsville Herald on December 19 and 26, 1925, and on January 2 and 9, 1926.

"(6) This order, after reciting the passage of the Creager franchise ordinance to first reading and the filing of petition on December 4, by the citizens, as above referred to, begins as follows: 'Now, therefore, be it ordered by the

city of Brownsville'—and is signed 'A. B. Cole, Mayor, City of Brownsville, Tex.'

"(7) The election was held on January 21, 1926, and resulted in a total vote of 261 for the ordinance and 59 against it. After declaring the result of the election the commission undertook to declare 'that said ordinance and the making of said grant prevail in said election, and thereby becomes and is now effective.'

"(8) Notwithstanding the declaration that the ordinance had become effective by reason of the election, the city commission undertook on the same day, February 19, 1926, to finally pass said ordinance."

Appellant's main and really only contention on this point is that, because no city official made the notice and it was made only by Creager, it therefore was invalid. The charter does not require the notice to be published by any named person or official. The section of the charter in question does not say who shall publish the ordinance, but simply requires that it be published at the expense of the applicant. The order of the city commission calling an election that the publication then running was so running with their full consent and accord, said order, approved by the mayor, A. B. Cole, stating, among other things, that, "whereas, publication is now being made of said ordinance in accordance with section 18 of the charter of the city of Brownsville," etc., said order going still further and providing for an election to be held covering the very thing contained in said publication.

The publication of said proposed ordinance was ordered by the mayor, A. B. Cole, who testified as follows:

"I am A. B. Cole, mayor of the city of Brownsville, and I was mayor during October, November, and December of last year. After the passage of the ordinance, I instructed the city secretary before the commission to proceed at once to publication of the ordinance, have the same published, and I don't know what was done about it, except it appeared and was published later. * * * The secretary was instructed to have the notices posted, as well as published. I saw the notice itself posted."

From the above it appears that the publication of the ordinance was made under the direction of the mayor, given before the city commission, and it is not questioned but that the publication ran for the required length of time and set out the proposed ordinance correctly.

The commission recognized the publication of the proposed ordinance, as published at the direction of the mayor, which was given in an open meeting of the commissioners, approved the same, and acted upon it, and it served its purpose, and the election was thereafter petitioned for and held thereunder.

The fact that Mr. Creager signed the notice when he was not required to sign it, will not invalidate it. The rule seems to be in such cases of irregularity, for that is what it seems to be, that a substantial compliance with the terms requiring publication of notices is sufficient. The publication was ordered as the charter required under the direction of the municipal governing board, and, as made, was acted upon favorably by it.

The city charter of Brownsville did not require the commission to pass to final hearing a proposed ordinance for a franchise before the same is voted on at an election called for that purpose upon petition of the voters of the city. It was published for the required time, and the public had the knowledge and benefit of it. A petition was filed for an election by the voters of the city, and the election was duly called and carried out, and at that election 261 voted for and 50 against the ordinance. The ordinance becomes effective by virtue of the vote cast at the election, and the charter so provides in express terms when it says:

"If at said election the majority of the votes cast shall be for the granting of such franchise or privilege, said ordinance and the making of said proposed grant shall thereupon become effective."

Section 18 of article II of the City Charter of Brownsville does not require that the commission pass to final reading a proposed ordinance wherein a franchise is proposed to be granted, before same is voted on at an election called for that purpose, upon petition of the voters of said city. This ordinance became effective upon that vote without the requirement of any other or further act. We overrule the proposition.

[2] We believe, in the absence of any express restriction or limitation, there is ample power in the charter of the municipality of Brownsville and in pursuance of its police power to grant this franchise to build and operate the bridge whether it be called an international bridge or otherwise, that may cross the border or not; the city of Brownsville grants only the right in and to its streets. If it crosses an international stream, or is built to and upon foreign soil, those are questions that belong to the federal and foreign governments and they are of no concern to appellant.

[3] Appellant alleges and shows no special damages that grow out of the possible exercise of the rights granted to appellee by the use of the streets or construction of the improvements or operations thereon. We do not think that there is anything said in the authorities cited by appellant, nor in the cited case of Williams v. Davidson, 43 Tex. 1, against the power exercised by the city of Brownsville. Unlike the Williams Case, the municipality here has the right to grant the franchise over its streets and to the border, if no further. That right cannot be gain-

said, for in the very case cited, on page 40, the court says:

"Or, as said in another part of the opinion, the city may reopen and make fit for use the ford and roads to it, so as to obviate the complaint of plaintiffs, [that is that they had no means of crossing the river except over the toll bridge], leaving defendants and the state to settle the matter of continuing the exercise of such a public franchise."

The city exhausts its power when it grants its authority to permit the use and to make "fit for use * * * the roads to it." As to the bridge across the Rio Grande and in the Republic of Mexico, it stands as any other bridge similarly situated, spanning that river to Mexico. While appellee would have to pursue the same methods as others, it is a matter that cannot be here raised by appellant or taken advantage of by appellant without showing special damages. Creager testified:

"I know what type of bridge I am going to build. The plans are all made. I know I cannot build any bridge until it is approved by the army engineers, and, if they disapproved this plan I have here, I would have to fix some other plan to meet their requirements. I am going to have to submit plans they will approve, or I will not construct the bridge—I would not be allowed to, that is obvious. I have determined the type of bridge I am going to build—that is dependent on the War Department, but we will have no difficulty in securing the approval of the War Department in regard to these plans.

"Take the top of the river bank where this center line meets the proposed bridge, of the Levee approaches, I will say they will be in the neighborhood of a foot and one-half or two feet, maybe three, above the level of the ground, top of the bank. Exactly I couldn't tell you how high the north line of the bridge will be above the river bank at the point where it passes the river bank, a foot and a half or two feet. If the approach is put in here, it will begin to drop from a point out here and it would be some distance above the level of the ground. It comes to practically this point in this manner, that is, marked as the limit to which we could come, drop to street level considerably before reaching that point; the engineers can control that by the slant. I don't know how high that will be on the street until the plans are drawn and approved."

He also testified:

"Under no circumstances will the bridge constructed cross Fourteenth street or cross Levee street, or prevent the free passage of vehicles and pedestrians from Fourteenth street to Levee street and from Levee street into Fourteenth street."

No special damages are shown to accrue to appellant by reason of this franchise. Appellee has shown that the use of the streets will not be interfered with, and it has not been shown that the abutting property of appellant will be taken, damaged, or

292 S.W.—39

destroyed. The alleged injury is not shown to be irreparable in such sense as will require the strong arm of the court of equity to interfere, and there is no probability that the consequences of the proposed act will be as fatal to appellant as he alleges. The evidence, on the contrary, shows no probability of appellee doing the acts sought to be restrained. 1 High on Injunctions p. 36, § 22; Id. pp. 331 and 347; 32 C. J. p. 264, § 415.

On the question of injury in cases of this nature it is said in 13 Ruling Case Law, p. 73, § 65, under the head of "Necessity For Special Injury," as follows:

"To warrant a recovery in any case, it must appear that the complaining party has suffered some special damage differing in kind and not merely in degree from that sustained by the general public. It is not enough that the vacation results merely in some inconvenience to his access, or compels a more circuitous route of access, or a diversion of travel in front of the premises, and a consequent diminution of value. If the vacation cuts off his only means of access to his property from the main public ways, then he is entitled to recover whether his property fronts upon the vacated portion of the way or not. On the other hand it is generally held that, if his property does not abut on the vacated portion of the street, and he is not deprived of the only reasonable means of access thereto, he is not entitled to compensation, at least until he suffers some other special damage."

From the testimony it is shown that the rights that appellant is enjoying will in no sense be interfered with or changed by the building of the bridge and improvement of the streets, nor will his free and undisputed use of his property be interfered with.

[4] The appellant has shown no special damage that would justify an injunction to stop the work or cancel the franchise that was approved by the voters of Brownsville. The franchise has been granted by the deliberate and, no doubt, well-considered act of the municipality and approved by the public vote. In the exercise of its police power, as looking to the public interest and benefit of its city and the probable future benefit to result from it, courts will view, when possible, such grants with favor in the absence of any fraud.

[5] No city has the power to pass to any person the entire use of one of its public traveled streets in such a way as to destroy its character as a street to the public, and cause it to be closed and appropriated for private use. Rische v. Texas Transportation Co., 27 Tex. Civ. App. 33, 66 S. W. 325; Krause v. City of El Paso, 101 Tex. 211, 106 S. W. 122, 14 L. R. A. (N. S.) 582, 130 Am. St. Rep. 831; Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288; Railway Co. v. Eagle Pass (Tex. Civ. App.) 282 S. W. 319. In case of actual damages, if any, that may result to appellant by the use of the streets,

appellant, as others, still has an adequate remedy at law.

We find no error in the ruling of the court or any error assigned that should cause a reversal, and the judgment of the trial court is therefore affirmed.

### On Motion for Rehearing.

[6] We have carefully considered the appellant's motion for rehearing, and desire to submit an additional, well-considered authority that a bridge approach placed upon a public street is not an additional servitude upon the street, so as to require compensation to the abutting owner, although access between his property and the street is destroyed. Barrett v. Union Bridge Co., 117 Or. 220, 243 P. 93, annotated in 45 A. L. R. 521, on right of abutting owner to compensation for interference with access by bridge or other structure in public street or highway.

There is nothing new stated that was not urged by appellant in his brief and considered by us.