## EAGLE PASS & PIEDRAS NEGRAS BRIDGE CO. v. TEXAS-COAHUILA BRIDGE CO. (No. 7535.)*

(Court of Civil Appeals of Texas. San Antonio. Jan. 13, 1926. Rehearing Denied Feb. 3, 1926.)

1. Navigable waters 20(2)—Failure of chief of engineers to act held not to affect statute relative to bridges.

Where chief of engineers, knowing that temporary bridge across Rio Grande river was not lawfully built, told bridge company that no action would be taken to remove it, his failure to act could not affect power 'and authority of Act Cong. March 23, 1906 (U. S. Comp. St. § 9961), to regulate construction of bridges over navigable waters, since provision of such law cannot be set aside except by Congress.

2. Navigable waters 20(2)—Showing required to enjoin building of bridge.

Bridge company, in order to enjoin another from building bridge across Rio Grande river, was required to show that it had properly secured from national government exclusive right to construct bridge, and that such exclusive right had been assailed by defendant.

3. Navigable waters 20(2)—Bridge company's legality judged by own acts, rather than those of predecessor.

Where bridge company, claiming right to build bridge across Rio Grande river, did not attempt to use franchises, bought without authority from old bridge company, but sought to acquire franchise under new name, and where it had never obtained approval of Mexico, permit to build given by chief of engineers had expired as provided by U. S. Comp. St. § 9966, and plans were never submitted to War Department as required by U. S. Comp. St. § 9961, its legality must be judged in light of own acts and not those of former corporation.

4. Navigable waters 20(2)—Approval of plans for bridge not presumed.

Where bridge company claimed to have secured from national government right to build bridge across navigable river, it could not be presumed, in face of facts to contrary, that plans were approved by chief of engineers or any one else, since presumptions are indulged in the absence of facts and not in opposition thereto.

5. Navigable waters 20(2)—Congress held to evince intention to control navigable streams.

Fact that no bridge can lawfully be constructed over any navigable stream in the United States without consent of Congress, nor until plans for such bridge have been submitted to and approved by chief of engineers and Secretary of War, evinces intention of Congress to take control of such streams.

Appeal from District Court, Maverick County; Joseph Jones, Judge.

Suit by Eagle Pass & Piedras Negras Bridge Company against Texas-Coahuila Bridge Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Douglas & Carter, of San Antonio, for appellant.

David E. Hume, and Ben V. King, both of Eagle Pass, and Denman, Franklin & Denman and George Cannon, all of San Antonio, for appellee.

FLY, C. J. Appellant instituted suit against appellee to obtain a permanent injunction restraining appellee, its president, and R. W. Speece in charge of the work of building the bridge, and George H. Bradford, who is furnishing "the apparatus and equipment with which said proposed bridge is being constructed," from constructing, maintaining, and operating a bridge across the Rio Grande at Eagle Pass, and pending the litigation the court was asked to grant a temporary injunction. A temporary restraining order was granted and the case set down for a hearing, at which time, after a full hearing of the evidence, the trial judge set aside the restraining order and denied a writ of injunction. From that judgment this appeal has been perfected.

This is a contest between two bridge companies that have built temporary bridges spanning the Rio Grande, connecting the American with the Mexican bank at Eagle Pass. Appellant claims to be acting under the rights and powers granted the Rio Grande Bridge & Tramway Company, organized in 1883, and granted authority by the Congress of the United States, on May 29, 1884, to construct a bridge across the Rio Grande at Eagle Pass, and authorized to

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 24, 1926.

construct such bridge in 1887 by Mexican authorities, municipal, state, and federal. It was alleged that the bridge was constructed and was acquired by two corporations, one on 'the American side the Porfirio Diaz & Eagle Pass Bridge Company, and the other the Puentes Carlos Pacheco, on the Mexican side. That bridge was partially destroyed about the year 1899, but was rebuilt and was continuously in operation as a toll bridge until June 19, 1922, when it was destroyed by a flood, and on August 4, 1922, appellant acquired "the right and title to the remains of the old toll bridge aforesaid and the rights and franchises above set out on the Texas side of the Rio Grande." It was also alleged that—

"Pending the erection of a permanent bridge, plaintiff about September, 1922, obtained the approval of the chief of engineers and of the War Department to plans for the erection of a temporary bridge across the Rio Grande at Eagle Pass. Said temporary bridge was erected shortly thereafter and operated as a toll bridge until on or about May 1, 1925, at which time said temporary bridge was washed away."

Afterwards, it was alleged that, with the consent of the War Department at Washington, a temporary bridge was completed on or about June 15, 1925, and put into operation as a toll bridge. It was also alleged that on or about March 18, 1911, the Porfirio Diaz & Eagle Pass Bridge Company obtained from Eagle Pass a franchise for the operation of a bridge then existing for 25 years, and the said franchise was transferred to appellant by its owner.

It was also alleged by appellant that appellee company is constructing and proposing to operate a public pontoon bridge across the Rio Grande about 100 feet north and above appellant's bridge, to the damage and injury of the property and. contract rights of appellant, and without the approval of the United States government. Appellee alleged that appellant had been operating a temporary toll bridge, without any authority, that it did not desire nor intend to erect a permanent bridge because more money could be realized from temporary bridges erected at a small cost and have them periodically destroyed by floods, than to erect a permanent bridge at a heavy cost. Appellee claimed that passage over its temporary bridge, which was nearing completion, would be free of tolls and that there would be every incentive to hurry the construction of a permanent bridge.

[1] The first proposition starts with the assertions that it is undisputed that appellant had constructed and is operating a toll bridge across the Rio Grande under acts of Congress of 1884 (23 Stat. 29) and 1923 (42 Stat. 1482), authorizing its erection, and under plans approved by the chief of engineers and the War Department and a franchise from Eagle Pass. On the other hand, the proposition states it is undisputed that appellee is engaged in erecting and will operate a bridge across the Rio Grande to compete with appellant, without any authority federal or municipal. The facts as to whether appellant was operating a bridge built under and according to an act of Congress of the United States are not undisputed, and it is. claimed by appellee that the construction and operation of the bridge were accomplished without such authority. Appellant corporation was incorporated in 1922, and has never built a permanent bridge across the river. It was incorporated after a bridge built by a former company, under franchises granted by federal and state authority, had been destroyed by a flood. That flood occurred on June 19, 1922, and a new corporation, appellant herein, was organized and bought certain property from the old corporation, and applied, in 1923, to the Congress of the United States for permission to build a bridge. No permit was given by Congress for a transfer of the franchise of the old company to appellant, and no such permit was given. No approval of the Mexican government was obtained by appellant to build the bridge. The permit given by the chief of engineers to build the bridge was dated January 21, 1924, and under the terms of 'section 9966, Compiled U. S. Statutes expired one year thereafter. No permit was ever obtained from the Republic of Mexico to build the bridge, although that permission was absolutely necessary. No plans of the bridge were ever submitted to the War Department as was required. Section 9961, U. S. Stats. The law is emphatic that such bridge shall not be built or constructed until the plans and specifications for its construction have been submitted to the Secretary of War and chief of engineers for their approval and have been approved by them. This provision of the law cannot be set aside by any authority except the Congress of the United States, and of course the opinion of a chief engineer cannot affect it. The failure to act on the part of such chief of engineers· could not render the illegal acts of appellant in connection with the temporary bridge legal, and did not affect the power and authority of the statute. Act of March 23, 1906 (U. S. Comp. St. § 9961). The chief of engineers knew and in effect stated that the temporary bridge was not lawfully built, but complacently informed appellant that no action would be taken to remove the bridge because "so far as known it does not injure the interstate or foreign commerce on the stream."

[2] Appellant seeks to place its.right to an injunction on the illegality of the construction of the temporary bridge on the part of appellee. When it seeks an injunction as against appellee, the burden rests upon it to present such equities as will entitle it to the

writ, and consequently 'it was held to show that it had obtained from the national government the exclusive right to construct a bridge across the Rio Grande and that such exclusive privilege had been assailed by appellee. If it had not obtained a legal franchise to construct and operate a temporary bridge across the river, it could not succeed in its desire for a writ of injunction on the ground that appellee had constructed and intended to operate a temporary bridge across the river without having obtained a franchise entitling it to do so. In order to establish its right to an injunction against one alleged to be invading a franchise right, the plaintiff must show, not only a grant from the proper authority, but also the fulfillment of all obligations imposed upon it by the act granting the franchise as conditions. There must not only be a franchise but an exclusive one shown. Pom. Eq. Jur. '§ 2016; Parsons v. Hunt, 98 Tex. 420, 84 S. W. 644.

[3] The evidence clearly shows that appellant sought to acquire a franchise under a new name and has never attempted to act under any franchise purchased from the old company. It built new temporary bridges, even though it may have used some material that formed a part of the old bridge. It did not obtain any authority to purchase and use the franchises purchased, but all attempts made by it were to act as a new corporation under new franchises. Its legality must be judged in the light of its own acts and not those of any former corporation.

[4] It cannot be presumed, in the face of facts showing the contrary, that plans were approved by the chief of engineers or any one else. Presumptions are indulged in the absence of facts and not in opposition to them.

[5] Congress has declared that no bridge can lawfully be constructed over any navigable stream in the United States without the consent of Congress, nor until the plans for the same have been submitted to and approved by the chief of engineers, and the Secretary of War, and that evinces an intention to take control of such streams. It is insisted, however, by appellant, that the Supreme Court of the United States, in International Bridge Co. v. New York, 254 U. S. 126, 41 S. Ct. 56, 65 L. Ed. 176, has held that Congress has not assumed exclusive right over international bridges. That question was not involved in the case cited, the only ruling being that where the state of New York in 1857 acquired the right to erect a bridge across the Niagara river, Congress had not attempted in subsequent legislation to interfere with such right.

Every material question raised by the fourteen propositions has been considered, and finding no merit in either of them, the judgment of the trial court is affirmed.