This suit was brought by way of injunction by the appellant against appellee to establish its alleged superior claim, right, and title to occupy and *Page 1013 
construct its bridge over and across the Rio Grande river, between Brownsville, Tex., and Matamoros, in the republic of Mexico. Upon the hearing of the application it was denied. Appellees sought no affirmative relief, and the issue was upon appellant's contention, denied by appellee, that the appellants had the superior right to occupy the designated and contested place in question. The Rio Grande river is a large stream or body of water constituting the boundary or international line between the two republics. Judicial knowledge will be taken as to the location of the two cities and the navigability of the International Rio Grande river.
It is not necessary here to set out any more of the pleadings of the parties or the issues, since their pertinence will be disclosed in this opinion.
It is apparent that practically the same issues and the same parties in interest are here now that were before the court in the case of Malott v. City of Brownsville (Tex.Civ.App.) 292 S.W. 606, decided February 16, 1927, (No. 7677).
In the cited case Malott was the real adverse party. He now appears in this case as one of the real organizers and the owner of a large share of stock in appellant's corporation. So it may be said the same real issues, the same real questions, and same parties, to a certain extent, are involved in both cases. Our Supreme Court granted a writ of error in that case, which was affirmed by the Commission of Appeals and approved by the Supreme Court. 298 S.W. 541; 300 S.W. 29. So we shall treat that case as correctly disposed of by this court, in so far as applicable here. Appellee has established a prior right to construct the bridge in question unless there was invalidity in the proceedings such as to postpone his prior title.
In the very beginning we will refer to the recent holdings of our Supreme Court upholding the state's title to land in the bed of navigable streams. See State et al. v. Grubstake Inv. Association et al.,297 S.W. 202; State v. Black Bros. et al., 116 Tex. 615, 297 S.W. 213.
We do not agree with appellant in the statement "that this case involves any construction of section 9971 of the Compiled Statutes of the United States (33 USCA § 401)," nor of any federal statute, nor do we or will we construe any federal statute, because there is no necessity for it in this case. There is no conflict of any statutes involved, because each party has attempted to comply with the acts of Congress on the subject. It is a question that involves the priority of rights, first in time first in right. Using a common or trite expression that conveys the same meaning, "the finder is the keeper."
We make this illustration because it is apparent from the record introduced on the trial that appellee had the prior right to construct the bridge in question, and appellant, upon whom the burden rests to show prior right or equities, has wholly failed to do so. While it may be admitted, for the sake of argument, that appellant has the right to construct its bridge across the river, but it had no exclusive or superior right to construct its bridge at the point in controversy and thereby postpone appellee's right, because at that particular point of crossing the possession and right had been secured by appellee.
On May 26, 1926, the appellee Gateway Bridge Company filed its articles of incorporation, for the erection and maintenance of a bridge across the Rio Grande river, with the secretary of state, and was on May 27, 1926, granted a permit to do business in the state of Texas, for the purpose and to the extent as follows:
"To construct and maintain a bridge from the city of Brownsville, Cameron county, Tex., across the Rio Grande river to Matamoros, state of Tamaupilas, United States of Mexico, and to collect such tolls for passage over the same as may be lawfully charged, together with such further powers and privileges as are conferred on foreign corporations by the laws of the state of Texas, for a period of ten years. * * *"
On June 29, 1926, after appellee had secured its permit to build the bridge, the appellant filed with the secretary of state its articles of incorporation for the purpose of building its bridge, stating the particular place, and was granted the state's permit. Appellee was granted a prior permit to build the bridge across the Rio Grande river to Matamoros, Mexico, and had obtained the consent of Congress and the republic of Mexico to build such bridge, on the exact location appellant seeks to oust appellee from in order to itself construct its own bridge there.
Laying out of sight appellant's claims, which were obtained subsequent to the rights of appellee, long after the time that appellee was incorporated, and hence before appellant's very existence, it cannot postpone appellee's prior rights. We understand that appellant claims it has exclusive rights to the bridge site in controversy, primarily by virtue of federal statutes and laws; but appellant contends that the federal government's powers over the stream in question are merely permissive, and that it does not possess the power or authority to grant such rights as set up by appellees. But it must be conceded, as claimed by appellees, that the permission from the federal government is necessary to entitle it to construct a bridge across the Rio Grande river into Mexico; and it is also necessary to secure the consent of the republic of Mexico. The undisputed proof shows that, not only did appellee acquire its charter rights and privileges from the state of Texas and the city of Brownsville, but also it acquired similar rights and *Page 1014 
privileges from the federal government of the United States and Mexico, with the approval by the chief of engineers and the Secretary of War, of the location, plans, and specifications of the bridge in question.
It is true, both parties have franchise rights from Texas and our federal government to construct an international bridge across the river. Appellee has the consent of Mexico to do so, but appellant has shown no such permission from Mexico, if such exists at all. Here the grant to appellee covered any point from Brownsville to Matamoros, and the point in question is within the franchise, permit, or grant, which was designated and given to appellee by the city of Brownsville, while appellant's charter limits its crossing "from the intersection of Fourteenth street and Levee street, in the city of Brownsville, Cameron county, Tex., to a point of the Mexican bank, * * * said Fourteenth street and Levee street being public roads or streets of the county of Cameron and of the city of Brownsville."
Not only had appellee secured its right to build this bridge, but had located upon the very point in question, first having secured the state's permit, the city of Brownsville's consent, and the consent or permit of the federal government and authorities, and the Mexican government, too, leaving nothing else for it to do. But it is not shown that appellant secured any permission or franchise from either Brownsville or the republic of Mexico to construct its bridge. Appellee had the prior right to the street named, granted it by the city of Brownsville (G. C. Ry. Co. v. G. C. S. Ry. Co., 63 Tex. 529), and this right or grant could not be usurped and set aside by the subsequent location.
The state of Texas had already granted appellees a permit to build their bridge from Brownsville to Matamoros, and appellees had already designated the particular site, to the knowledge of appellant, or at least its incorporators, before appellant was incorporated, and appellees were in actual possession of said site and engaged in the construction of their bridge when appellant brought this suit; and, the state having granted to appellees the right to build their bridge from Brownsville to Matamoros, and appellees having designated the exact site therefor, which site was within the permit from the state, the state could not thereafter grant to appellant an exclusive right to this same site, and whatever rights appellant did obtain were certainly subject to the rights already granted by the state to appellees.
This suit was one in equity, praying for equitable relief, in which C. F. Malott owns 98 of the 100 shares of stock in appellant's corporation, who has failed, as we have stated before, in his efforts to obtain an injunction in said cause No. 7677, of this court, concerning the very same identical bridge site, and, failing, immediately organized this corporation and seeks in this suit to obtain an injunction for the very same relief denied him, although appellees had obtained all necessary and prior rights to build the bridge at the identical site. Appellees had the location, plans made, and specifications approved by the proper authorities, and are in a position to do the work. No equities are plead or shown why the rights of appellees, "first in order of time," should be canceled or postponed in favor of another.
The appellant has failed to show any reason or equitable ground for an injunction; in fact, has not shown that it complied with all the laws precedent, which was required of it in order to secure the permission of the federal government of Mexico to construct a bridge across one of her navigable streams, as it was to procure the consent of our authorities, state and federal.
In the case of Eagle Pass Piedras Negras Bridge Co. v. Texas-Coahuila Bridge Co. (Tex.Civ.App.) 279 S.W. 937, opinion by our Chief Justice Fly, it was said:
"When it seeks an injunction as against appellee, the burden rests upon it to present such equities as will entitle it to the writ, and consequently it was held to show that it had obtained from the national government the exclusive right to construct a bridge across the Rio Grande [River] and that such exclusive privilege had been assailed by appellee. If it had not obtained a legal franchise to construct and operate a temporary bridge across the river, it could not succeed in its desire for a writ of injunction on the ground that appellee had constructed and intended to operate a temporary bridge across the river without having obtained a franchise entitling it to do so. In order to establish its right to an injunction against one alleged to be invading a franchise right, the plaintiff must show, not only a grant from the proper authority, but also the fulfillment of all obligations imposed upon it by the act granting the franchise as conditions. There must not only be a franchise but an exclusive one shown. * * * Its legality must be judged in the light of its own acts and not those of any former corporation. * * * Congress has declared that no bridge can lawfully be constructed over any navigable stream in the United States without the consent of Congress, nor until the plans for the same have been submitted to and approved by the chief of engineers, and the Secretary of War."
Appellee has shown a compliance with the law and the fulfillment of all obligations imposed thereby. Its rights thereby became vested, and cannot be set aside, disturbed, or postponed to appellant's claims. The broad powers of courts of equity to issue injunctions should be exercised always with great caution and only when the reasons and necessity are clearly established. 32 Corpus Juris, p. 33, § 12, page 35, § 15, page 347, § 579.
We have looked in vain, and fail to find *Page 1015 
shown or established any reason to grant the relief sought.
Finding no error shown in the rulings of the trial court as urged by the assignments and propositions, they are each overruled, and the judgment of the trial court is affirmed.