## RAILROAD COMMISSION OF TEXAS et al. v. RED ARROW FREIGHT LINES, Inc., et al.

### No. 8518.

Court of Civil Appeals of Texas. Austin.

July 27, 1936.

Rehearing Denied Sept. 23, 1936.

Wm. McCraw, Atty. Gen., and Curtis E. Hill, Asst. Atty. Gen., for appellants Railroad Commission, Ernest O. Thompson, C. V. Terrell, and Lon A. Smith.

Felts, Wheeler & Wheeler, of Austin, and Marshall O. Bell, of San Antonio, for appellant H. H. Lawler.

Rawlings & Sayers, of Fort Worth, for appellee Red Arrow Freight Lines, Inc.

Baker, Botts, Andrews & Wharton and Andrews, Kelley, Kurth & Campbell, all of Houston, and Claude Pollard and Herbert L. Smith, both of Austin, for other appellees.

McCLENDON, Chief Justice.

Appeal from a judgment annulling an order of the Railroad Commission, which authorized H. H. Lawler, doing business under the name of Alamo Freight Lines, to re-route through service common carrier freight trucks between Houston and Rio Grande Valley points, so as to take state highway No. 12 between Rosenberg and Beeville, via Wharton, Victoria, and Goliad, instead of highway No. 3, between Rosenberg and San Antonio, and highway No. 16, between San Antonio and Beeville; and perpetually enjoining Lawler from operating over the route between Rosenberg and Beeville. Two suits (which were consolidated) were brought to set aside the order; one by Red Arrow Freight Lines, Inc., which owned and operated a common carrier motor freight line of trucks between Houston and Edinburg, and points beyond, via Rosenberg, Victoria, and Beeville, over highways 2, 12, and 66; the other by four railway common carriers (Texas & New Orleans Railroad Company, L. W. Baldwin and Guy A. Thompson, trustees in bankruptcy of the St. Louis, Brownsville & Mexico Railroad Company, the Missouri Pacific Transportation Company, and the Southern Pacific Transportation Company) operating lines between Houston and Brownsville and other Rio Grande Valley points. The Railroad Commission and Lawler have separately appealed, Lawler under a supersedeas bond. For convenience, the respective parties litigant will be referred to as the Commission, Lawler (appellants here and defendants below), the Railroads, and Red Arrow (appellees here and plaintiffs below).

Lawler's application to the Commission was merely for a rerouting under his existing certificates of through trucks be-

tween Houston and Rio Grande Valley points, and did not comply with R.C.S. art. 911b, § 10 (as amended in 1931 by Acts 42d Leg. p. 480, c. 277, § 10 [Vernon's Ann. Civ.St. art. 911b, § 10]), and particularly in that it did not "point out the inadequacy of existing transportation facilities or service," nor "specify wherein additional facilities or service are required and would be secured by the granting of said application." The Railroads appeared at the hearing and offered to show that the existing transportation facilities were adequate, and that to grant the application would create competition deleterious to their business. The Commission took the view that the application was merely for a rerouting under existing certificates; that the issue of convenience and necessity had already been determined in granting these certificates; refused to hear the Railroads' above proffered evidence; and limited the hearing and its findings to the adequacy of the highways over which the rerouting was sought. The Red Arrow did not appear at the hearing due to the fact that it had been advised by the Commission that Lawler would be required to amend his application so as to comply with article 911b, § 10, and it (Red Arrow) would be further notified of the date of hearing, which was not done.

Under the conclusions we have reached, the controlling question the appeal presents is whether in substance and effect Lawler's application was one for a certificate of convenience and necessity which required a showing by him and a finding by the Commission that the territory was not adequately served by existing facilities, and that additional facilities or service were required and would be secured by granting his application.

Upon this question appellants' contentions may be thus substantially stated: The evidence, hearing, and order thereon were properly confined to highway conditions, without consideration of public convenience and necessity, because the quantum or advantage of service sought and granted was no greater than that which Lawler already had under his existing certificates.

The pertinent facts are uncontroverted. Briefly stated they are: Lawler owned three certificates of convenience and necessity designated by number as 2288, 2339, and 2827. It is not necessary to detail the origin or history of these certificates, or the chains of title under which he held them. No. 2288 authorized "one schedule each way daily," "from Houston to San Antonio via Eagle Lake, Schulenburg, Seguin, Luling and Gonzales (other towns and stops on the route and between termini)," under the following schedule: Eastbound: Lv. San Antonio 7:00 p. m., Ar. Houston 7:03 a. m., with 17 scheduled intermediate stops. Westbound: Lv. Houston 7:00 p. m., Ar. San Antonio 7:03 a. m., with like intermediate stops. No. 2339 authorized "one round trip daily except Sunday" between San Antonio and Brownsville via Skidmore and Alice, under the following schedule: Lv. San Antonio 8:00 p. m., Ar. Brownsville 6:00 p. m., with 16 scheduled intermediate stops, including a "Lay Over for Sleep" at Alice from 2:10 a. m. until 7:30 a. m. Return schedule: Lv. Brownsville 7:30 a. m., Ar. San Antonio 10:30 p. m., with like intermediate stops and the notation, "Make Mission and McAllen if any freight." No. 2827 was over the route from San Antonio to Alice via Three Rivers. The applicant was restricted from serving any points between the two termini, and was required to "follow the schedule he now uses and operates between the two points. We do not regard this certificate as having any material bearing on the case.

The application in issue recites Lawler's ownership of certificates 2288 and 2339; that it will be an economy and benefit for him to carry cargo direct from Houston to Edinburg; that it will benefit the public generally because the new route "will eliminate 120 miles of truck operation over the highways of Texas, since the direct distance from Houston to Edinburg is 342 miles, whereas" said distance "via San Antonio is 462 miles, and the amount of highway traffic over the new prepared route is less than the traffic over the present route"; that he "does not propose to increase the number of trucks operated at this time but in as much as said newly proposed route is a shorter distance applicant will be able to render better service to the public generally"; "that he does not propose to serve any intermediate points between Rosenberg and Beeville," the only new territory traversed; and that he "is in no way attempting to gain an advantage by serving any towns which he is not at present authorized to serve."

The order granting the application found (inter alia) "that if granted this authority applicant will be able to render a faster

738

and safer and more convenient service to the shipping public." It was admitted that Lawler began operating over the new route immediately after the application was granted, that he has so continued ever since; and that he would continue to do so "until somebody stops him." Also that his trucks leave Houston at 7 or 8 o'clock p. m. and arrive at Rio Grande Valley points about 7 or 8 o'clock the next morning, thereby shortening his service between Houston and said points about 30 hours. At this point we direct attention to the fact that the schedules under the two certificates 2288 and 2339 required a layover of about thirteen hours at San Antonio in shipments over the combined routes from Houston to Valley points. Lawler testified that the new route "would be much easier and much shorter (120 miles) and would effect quite a saving in the operation," and that from his experience in the business it is necessary "to cut your operating expense as much as possible to keep your operation going."

The two certificates were granted at different times to different individuals. They were granted to serve separate and distinct transportation requirements: The one served the territory from Houston to San Antonio and intermediate points; the other, that from San Antonio to the Valley and intermediate points. In considering the question of convenience and necessity as to each certificate, only the needs, requirements, etc., of the two termini and intermediate points were involved. Neither certificate had any relation to the other. The fact that common ownership was finally united in Lawler in no way modified their effect. They were manifestly not designed originally, nor through common ownership thereafter, to provide a direct through service between Houston and Valley points. The order in suit manifestly conferred upon Lawler a right to render a service which was substantially different from that authorized in his two certificates, enabling him to compete directly with appellees in a manner in which he could not compete with them before, if in fact he could effectively compete with them at all before. It is elementary that advantage in service is one of the most important factors in competition, and that time is a prime element in transportation service. We are clear in the view that the application could not be granted as a mere rerouting under the two certificates, but that it required a showing and commission finding of convenience and necessity.

This particular question is one, we believe, of first impression in this state. It arose in two cases in Ohio (Pennsylvania R. Co. v. Public Utilities Commission, 116 Ohio St. 80, 155 N.E. 694, 697, and Central O. T. Co. v. Public Utilities Commission, 115 Ohio St. 383, 154 N.E. 323), the Supreme Court of that state holding: "An application to convert a local service, operated under two separate certificates, into a through service, is in effect, an application for a certificate * * * to operate a new route, it being in effect an application to change one of the termini of each of the existing certificates and to convert two separate routes into one * * * and before an order can issue granting such through service, the Public Utilities Commission must find that the public convenience and necessity require such service."

Appellants urge that this holding has no application here, since our statutes are materially different from those of Ohio. The general objectives of these statutes are the same, and the differences in details and wording are not material to the issue before us. However, independently of this, we regard the holding sound as applied to our statutes; and it is cited as a well-considered pronouncement of a sound legal principle; though the decisions are not binding as a matter of law in this jurisdiction.

The Commission's order recites several previous rerouting applications granted by it without further hearing on the issue of convenience and necessity; and appellants urge that these orders constitute departmental constructions of the Commission's statutory authority and should be followed by the courts. The situations presented in most of these orders were so different from that at bar as to present no appreciable analogy; in none do we regard the analogy such as to constitute a departmental construction upon the instant situation. However, granting arguendo that the order in issue is in accordance with a uniform construction by the Commission of its statutory authority, it is clearly not binding on the courts. The Commission is a statutory body having only such powers as are expressly granted or are necessary to effectuate the objectives of those expressly granted. State v. Robison, 119 Tex. 302, 30 S.W.(2d) 292. It is well settled that: "The courts are especially reluctant to overturn a long standing execu-

tive or departmental construction where great interests have grown up under it and will be disturbed or destroyed by the announcement of a new rule, or where parties who have contracted with the government upon the faith of such construction will be prejudiced." 25 R.C.L. p. 1043.

But "the rule does not apply where the language of the statute is plain, unambiguous, and not open to construction." State v. Texas Mut. Life Ins. Co. (Tex.Civ.App.) 51 S.W.(2d) 405, 412. See, also, McCallum v. Retail Credit Men (Tex.Com.App.) 41 S.W.(2d) 45.

■ Nor can mere usage be properly invoked to invest state officials or administrative boards with authority or powers not fairly or properly within the legislative grant. As was pointedly said by Mr. Justice Brewer in Interstate Commerce Commission v. Cincinnati N. O. & T. P. R. Co., 167 U.S. 479, 17 S.Ct. 896, 904, 42 L.Ed. 243: "It is urged that the commission has decided that it possesses this power, and has acted upon such decision, and an appeal is made to the rule of contemporaneous construction. But it would be strange if an administrative body could by any mere process of construction create for itself a power which congress had not given to it."

■ The statute makes it mandatory upon the Commission to give notice to interested parties and thereafter to hear and determine specified facts involved in the issue of convenience and necessity before it can grant this character of certificate; and, where the authority applied for comes fairly within the purview of the statute, compliance with its mandatory provisions is essential to the validity of the Commission's order, at least when brought in question in a direct proceeding, by one entitled by statute to have it reviewed.

Appellants further urge that appellees did not show themselves entitled to the injunctive relief prayed for on two grounds:

(1) Since the proceeding was to enjoin operation by a competitive franchise holder, it was incumbent upon appellees to show that they had valid franchises, and that they had complied with every statutory duty and met every statutory obligation devolving upon them in relation to such franchises; citing Eagle Pass, etc., Bridge Co. v. Texas-Coahuila Bridge Co. (Tex.Civ.App.) 279 S.W. 937, and Brownsville, etc., Bridge Co. v. Gateway Bridge Co. (Tex.Civ.App.) 2 S.W.(2d) 1012.

(2) There was no irreparable injury shown or threatened which was essential to the relief sought and granted.

■■ This was a statutory proceeding, expressly authorized by Vernon's Ann.Civ. St. art. 911b, § 20. To maintain the suit, it was therefore only necessary for appellees to show that they were interested parties within the meaning of the statute. In so far as the injunctive relief is concerned, it was merely ancillary to the judgment canceling the Commission's order, and was essential to the enforcement of that judgment. The cited cases have no application here. In so far as the Railroads were concerned, we would probably be required to take judicial knowledge of their lines, termini, and territory they served. The statement of facts shows that the case was tried largely upon record evidence and admissions of counsel. These admissions cover a number of pages in the form of statements of counsel which were either accepted as true or not objected to. It was conceded that in the hearing before the Commission the Railroads tendered proof to establish every fact essential to show their interest in the proceeding, their transportation facilities, needs of the territory which were fully supplied, etc. No question was raised as to their interest in the controversy. As to the Red Arrow it was specifically agreed: "At the time this case was heard, and long prior thereto, (it) was rendering services over the lines involved here; that it had ample facilities with which to render the service, and still is, under proper authority from the Railroad Commission." This was clearly sufficient to show that it had a valid certificate from the Commission, and was operating under it with ample facilities. The record throughout shows that no question was raised or intimated as to the statutory interest of any of the appellees in the controversy, but that the sole issue between the parties was that involved in the question first stated above: Whether the application was such as to require the Commission to hear evidence and find facts essential to support a certificate of convenience and necessity. The point that the appellees did not prove their right to maintain the action is manifestly an afterthought.

■ In so far as concerns the issue of irreparable injury, the record shows that the Commission exceeded its authority in granting the application without the above-noted hearing and findings, and that appel-

lees as interested competitors were entitled to have the order annulled. Injury to their business was a necessary consequence of unlawful competition. Such injury is likewise of necessity one which cannot be ascertained with certainty, and is therefore in large measure, if not entirely, irreparable, as that term is understood and construed in this connection.

The trial court's judgment is affirmed.

Affirmed.