**TARRY MOVING & STORAGE CO., Inc. et al., Petitioners,**

v.

**RAILROAD COMMISSION of Texas et al., Respondents.**

No. A–9210.

Supreme Court of Texas.

April 3, 1963.

Rehearing Denied May 22, 1963.

Christopher & Bailey, Fort Worth, for petitioners.

Will Wilson, Atty. Gen., Austin (Waggoner Carr, Austin), Marvin Sentell, Asst. Atty. Gen., Lanham & Hatchell, Austin, for respondents.

CULVER, Justice.

Originally the Railroad Commission granted four specialized motor carrier cer-

tificates authorizing the transport of certain goods to and from the following areas: (1) within a 50-mile radius of Olney; (2) within a 50-mile radius of Seymour; (3) within a 25-mile radius of Henrietta, and (4) within a 25-mile radius of Wichita Falls. The territories so allotted under these certificates overlap to a considerable degree.

In 1957 the Commission granted the application of James Jeter consolidating these four certificates. Some years later, after a hearing, the Commission granted Jeter's application to divide the consolidated certificates as they existed before the consolidation so as to enable him to sell three certificates to three separate individuals, retaining for himself the territory within a 50-mile radius of Olney. The case here arises out of the latter order.

On appeal by Tarry Moving & Storage Company et al. the orders of the Commission were sustained by the district court and the Court of Civil Appeals. 359 S.W.2d 62.

We brought the case here to determine the principal point in controversy, to wit: does Section 5a(a) of Article 911b, authorizing the Commission's disapproval of a sale if "not best for the public interest" when construed in the light of other provisions of the statute, impose the duty upon the Commission to consider the question of public convenience and necessity in passing upon the application to divide and sell the consolidated certificate or a part thereof under the facts above outlined? We now concur with the Court of Civil Appeals in answering that question in the negative.

This exact question had not heretofore been passed upon by our appellate courts nor does the statute itself expressly provide an answer.

Tarry Company contends that this transaction comes squarely within Section 5a(a) which provides that, before a specialized motor carrier certificate may be sold or transferred, an application therefor must be presented to the Commission and the Commission may disapprove if it determines that the sale is not (a) in good faith or (b) that the purchaser is unable to continue the operation so as to render the services demanded by public necessity and convenience or (c) that the sale is not best for the public interest. It further contends that since the Commission did not in its hearing require any showing that this transaction was "best for the public interest," the orders of the Railroad Commission cannot stand and must be stricken. Tarry insists that when a certificate has been purchased and consolidated with another certificate, the two have been unified and merged into a single certificate; that the original certificate is dead and cannot be revived; that in fact and in law, the application here was for the issuance of three new certificates, and therefore it would require all the proof and procedure as outlined for a new certificate under the statute. Tarry argues that three additional carriers have been authorized by this order, which indicates necessity for the consideration of public interest.

On the other hand the Commission takes the position that since no service to the public has been eliminated nor any new service provided and the proposed new carriers possess the necessary qualifications to render the same service that was furnished by Jeter, the interest of the public is not in issue. The Commission says that this is a division order and controlled not by Section 5a(a) but by Section 4(a) which vests the Commission with the power and duty to prescribe rates and all rules and regulations necessary to govern motor carriers and for the safety of their operations, and to supervise and regulate motor carriers in all matters affecting the relationship between such carriers and the shipping public.

The Commission says that no new operating rights have been created and it is only until they are sought that the issue of public interest becomes an issue.

The Commission insists that the situation here no more affects the public interest than would be the case if the original four certificate holders had sought permission to sell their certificates to four other individuals. Convenience and necessity for the service had already been determined, and by the sale the service would not be altered where the Commission had found upon a hearing that the purchasers had bought in good faith and would continue the operation so as to render the service demanded by public interest and convenience.

In L. A. Norris Truck Line v. Railroad Commission, Tex.Civ.App., 245 S.W.2d 746, wr. ref., the application was to divide from the certificate and sell the right to transport oil-field equipment. The attack made on the Commission's order granting the application was based on the fact that there had been offered no evidence of public convenience and necessity to support that order. The Court of Civil Appeals in upholding the order observed: "The question of necessity and convenience having been determined by the Commission at the time the original certificate was granted, there was no occasion to or authority for the reopening of such question upon the application for the sale and transfer of the divided portion of the certificate." That holding is strongly persuasive in favor of the Commission's contention here. If the public interest need not be expressly shown where the application is to divide the certificate as to commodities, then it would be logical to assume that the public interest would not be impaired where the application is to divide the territory. In each case an additional carrier will be created, but no change effected in the character of the service to be rendered. See also Roberdeau et al. v. Railroad Commission, Tex.Civ.App., 239 S.W.2d 889.[1]

Tarry Company demonstrates the similarity between the Federal Interstate Commerce Act, Sec. 5(2) affecting unifications, mergers and acquisition of control, with 5a

(a) of our act and cites certain federal decisions which lend support to its contention, among them being Southwest Transportation Company—Purchase—Johnson, 35 M. C.C. 437; McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544; and Pacific Intermountain Express Company—Control and Merger—Union Transfer Co., 12 F.C.C. 40724. These generally hold that operating rights may not be indefinitely removed from active use and preserved for subsequent transfer to an additional motor carrier when conditions may have materially changed in the territory both as to competition and traffic and to allow this practice would be inconsistent with the public interest.

■ We quite agree that the paramount consideration, in both State and Federal regulations controlling public transportation and common carriers, is that of the public interest. But whether in this case the old certificates lie dormant and thus are subject to sale with the Commission's approval or new certificates issued to the purchasers is largely theoretical.

It makes no practical difference whether we say the old certificates were revitalized or that new certificates were issued; the result of the division and sale is the same, at least so far as the public is concerned.

Tarry Company also cites Houston & North Texas Freight Lines v. Johnson, 140 Tex. 166, 166 S.W.2d 78, for the proposition that in order to authorize the division of an existing certificate into two parts and the sale of one of the parts, the Commission should find that the division and sale will not impair the service to the public. In that case the holding was, that before an application to divide and sell a portion of the certificate could be approved, it must be considered and acted upon at a regular or called meeting of the Commission. Since that procedure had not been followed we reversed and remanded. We did, however, take occasion to point out in view of the

1. Original opinion reinstated in Tex.Civ.App., 244 S.W.2d 887, wr. ref. n. r. e.

possibility of a later consideration of the matter, the Commission should take the matter of public interest into account. The application there sought to break up one through route into two connecting short routes, thus necessitating an interchange on commodities billed for shipment over the original through route, which in some instances might not serve the public as adequately as before the route was broken up. The application called for a change in the character of service rendered.

It may reasonably be said that since the Commission has found in this case that (1) the purchaser is financially able and capable of maintaining the service authorized; (2) the equipment proposed to be used by him meets all requirements; (3) he agrees to conduct operations in the same manner as theretofore authorized; (4) the application is made in good faith; and the further fact that the Commission found initially that "convenience and necessity" required this service, the public interest has been sufficiently considered.

■ There is substantial merit in Tarry's contention. The question is a close one; however, the scales are weighted with the departmental construction consistently given over the past 25 years, namely, that "public convenience and necessity" is not involved in consolidations or divisions of specialized motor carrier certificates. The Director of the Motor Transportation Division, employed in that capacity since 1938, testified the Commission has allowed carriers to divide certificates since 1934 and that at the hearing on such an application no proof of convenience and necessity would be required. He further testified neither division nor consolidated orders change in any manner the authority which existed theretofore.

The Commission has acted under the Attorney General's interpretation of the law as given in 1939 [2] to the effect that the Commission has the discretionary authority to approve the transfer of the portion of the route covered by one certificate to another carrier where two separate certificates of convenience and necessity have come into common ownership and the owner has maintained the services required under each certificate.

The Commission on December 20, 1946, adopted Rule 21 of Procedure and Practice before the Motor Transportation Division which provides as follows:

"Applications for the approval by the Commission of the consolidation or division of common carrier motor carrier certificates, specialized motor carrier certificates, or motor bus certificates, shall be in the form of a written petition directed to the Commission, setting forth the numbers and exact authority authorized by the certificates sought to be consolidated, or divided, and shall contain a brief statement of facts, showing wherein no new operating rights will be created by said consolidation, or division. Each application to consolidate, or divide, shall be accompanied by a statutory filing fee of $25.00."

Taking into consideration the Attorney General's opinion, the construction placed upon the statute by the Commission, and the custom and practice adhered to over a period of many years, we are constrained to hold that in acting upon the application here considered, it is not necessary for the Commission to require evidence establishing convenience and necessity.

The judgments of the lower courts are therefore affirmed.

STEAKLEY, WALKER and NORVELL, JJ., dissent to this opinion.

STEAKLEY, Justice (dissenting).

I respectfully dissent in the view that the orders of the Railroad Commission under

2. See Attorney General's opinion 0-1096 (1939).

attack do not comport with the statutory duties and responsibilities of the Commission under Article 911b, Vernon's Ann.Civ. St., the Texas Motor Carrier Act.

An analysis of the controlling provisions of Article 911b, and of the orders of the Railroad Commission shown in the record, together with their legal import, is required.

The public policy represented in the Texas Motor Carrier Act was declared by the Legislature in Section 22b of Article 911b, as follows:

"Declaration of Policy. The business of operating as a motor carrier of property for hire along the highways of this State is declared to be a business affected with the public interest. The rapid increase of motor carrier traffic, and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulation should be employed, to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that discrimination in rates charged may be eliminated; that congestion of traffic on the highways may be minimized; that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public, and that the various transportation agencies of the State may be adjusted and correlated so that public highways may serve the best interest of the general public."

The general duties of the Railroad Commission under Article 911b are strongly stated in Section 4(d):

"The Commission is further authorized and empowered, and it shall be its duty, to supervise and regulate motor carriers in all matters whether specifically mentioned herein or not so as to carefully preserve, foster and regu-

late transportation and to relieve the existing and all future undue burdens on the highways arising by reason of the use of the highways by motor carriers, adjusting and administering its regulations in the interests of the public."

The certificates of convenience and necessity involved in this case authorize operations as Specialized Motor Carriers pursuant to Section 5a of Article 911b. Among other things, the Legislature emphatically declared the following in Section 5a(d):

"The Commission shall have no authority to grant any application for a certificate of convenience and necessity authorizing operation as a 'Specialized Motor Carrier' or any other common carrier unless it is established by substantial evidence (1) that the services and facilities of the existing carriers serving the territory or any part thereof are inadequate; (2) that there exists a public necessity for such service, and (3) the public convenience will be promoted by granting said application."

Section 5a(a) authorizes the sale, lease, assignment or transfer of Specialized Motor Carrier certificates, subject to the approval of the Railroad Commission. It is specifically provided, as relevant here, that the Railroad Commission is authorized to disapprove a "proposed sale, assignment, lease, or transfer [which] is not best for the public interest." The statutory duty of the Railroad Commission to disapprove a proposed sale and transfer of a certificate if not best for the public interest is clear; as a corollary, orders of the Commission approving proposed sales and transfers inconsistent with, and contrary to, the basic purposes and policies of the Motor Carrier Act should be held invalid.

At times prior to 1956, and pursuant to Section 5a of Article 911b, the Railroad Commission issued four certificates of public convenience and necessity authorizing the motor carrier services of four separate specialized motor carriers in transporting

household goods, used office furniture and equipment, as follows:

Certificate No. 8848 authorizing the transportation of household goods and used office furniture and equipment from any point within a 50-mile radius of Olney, Texas, to all points in Texas, and vice versa;

Certificate No. 9233 authorizing the transportation of household goods and used office furniture and equipment from all points within a 25-mile radius of Wichita Falls, Texas, to all points and vice versa; excluding the transportation to or from Harris County, Texas;

Certificate No. 16472 authorizing the transportation of household goods, used office furniture and equipment from points within a 50-mile radius of Seymour, Texas, to all points in Texas, and vice versa; and

Certificate No. 16473 authorizing the transportation of household goods and used office furniture and equipment from all points within a 25-mile radius of Henrietta, Texas, to all points in Texas, and vice versa.

Each of these four certificates was issued after the filing of applications therefor, hearing by the Commission of public convenience and necessity, and findings by the Commission pursuant to the three requirements set forth in Section 5a(d), namely, (1) that the services and facilities of the existing carriers serving the territory or any part thereof were inadequate; (2) that there existed a public necessity for such services; and (3) that the public convenience would be promoted by the granting of the applications. Thereupon the public had available—and the Railroad Commission had found such to be needed and required by the public—four separate motor carrier services, the authorized operating territories of which overlapped in certain respects. The overlapping territories afforded the public a choice of multiple carriers subject to call for the specialized motor carrier service of transporting household goods and used office furniture and equipment. For example, a family residing in Wichita Falls moving to another point in Texas could call any one or all of four carriers to obtain the best available service from the standpoint of time and equipment; a family in Seymour could call either or both of two carriers; a family at Henrietta either or all of three carriers; a family at Throckmorton either or both of two carriers. Thus is illustrated the availability of services to the residents of all the cities and towns in the overlapping territories of the certificates. The important consideration at this point is that the Railroad Commission at the time of the issuance of these four certificates was required by the statute to determine and find that the public needed and required these multiple services; otherwise, the Commission was without statutory authority to authorize the services and issue the four certificates.

At various times in 1956 the respondent James H. Jeter, the owner of one of the certificates described above, entered into contracts with the owners of the other three certificates to purchase the operating rights represented thereby, subject to the approval of the Railroad Commission as required by Section 5a(a) of Article 911b. Jeter severally and at different times applied to the Railroad Commission for approval of his acquisition of the three certificates and the Commission did so by appropriate orders. The obvious result was that thereafter only one carrier was available to render the service to the public previously found by the Commission to require four separate carriers. Since the necessary legal effect of Section 5a(a) is to impose on the Commission the duty of disapproving certificate sales not "best for the public interest," it would seem clear that the order of the Commission approving the acquisition by Jeter of the three certificates—with the resulting reduction in the services available to the public—constituted a finding by the Commission that the public convenience and necessity no longer required the previously

authorized separately operating motor services.

There is, then, no question to be raised, and none is raised, of the validity of the action of the Railroad Commission in approving the acquisition by Jeter of the three separate operating rights and the performance thereafter by Jeter of the motor carrier services authorized by the four certificates involved. But the majority has overlooked the legal significance and import of the acts of the Commission in so doing.

We come now to the orders of the Commission under attack in this case. Following approval by the Commission of the acquisition by Jeter of the three certificates, and upon Jeter's application, the Commission consolidated the four certificates in a master certificate numbered 9233, dated October 21, 1957. Thereafter, and until the events now to be reviewed, Jeter alone held himself out to render the motor carrier services authorized by the master certificate.

On March 28, 1960, Jeter filed an application with the Commission "to create a new certificate to be numbered 18421 which will contain the authority to transport household goods, used office furniture and equipment, from all points within a 25-mile radius of Wichita Falls, Texas, to all points and vice versa, excluding the transportation to or from Harris County, Texas." Contemporaneously therewith, Jeter and his purchaser also filed application for approval by the Commission of the sale and transfer of the new certificate No. 18421 to the newly purchasing carrier, Alex J. Haffmeister, d/b/a Moore Moving and Storage.

Similarly, on January 30, 1961, Jeter filed an application with the Commission "so as to create a new certificate to be numbered 19121 which will contain the authority to transport household goods, used office furniture and equipment from all points within a 25-mile radius of Henrietta, Texas, to all points in Texas and vice versa." Contemporaneously therewith, Jeter and his purchaser filed an application for approval of the sale and transfer of the new certificate to the second new carrier, Wayne K. Horton, d/b/a Abbott Moving and Storage.

Similarly, on May 5, 1961, Jeter filed an application with the Commission "so as to create a new certificate to be numbered 19377 which will contain authority to transport household goods, used office furniture and equipment from points within a 50-mile radius of Seymour, Texas, to all points in Texas and vice versa," and contemporaneously therewith he and his purchaser filed application for approval of the sale and transfer of the new certificate to the third new carrier, R. C. Albert, d/b/a Albert Van and Storage.

The Railroad Commission by several orders approved all of the foregoing applications without hearing evidence upon, or considering, or finding that the services and facilities of the existing carriers were inadequate, or that there existed a public necessity for the new services, or that the public convenience would be promoted by the new services. These are the orders of the Commission brought under attack in the case at bar.

It is my view that the orders are contrary to the express provisions and reasonable intendments of Article 911b, the Texas Motor Carrier Act, and are invalid. It is wholly inconsistent with the duties of the Commission to approve the elimination of previously authorized motor carrier services, with the necessary implied finding that the public convenience and necessity no longer required the separate services, and then, some three years later, permit the original purchasing carrier to establish three new motor carrier services by the sale of the new certificates. It was unquestionably the duty of the Commission to consider the adequacy of the existing motor carrier services at the time of the sale of the three certificates to new carriers, together with the question of whether or not the public convenience and necessity required the new services. It can certainly be said that Jeter, the original purchasing, and later selling,

carrier, and not the Commission, has been permitted to control the nature and extent of the household goods and used office furniture and equipment specialized motor carrier services available to the public in the territories involved.

This Court is committed to the proposition that the Railroad Commission is required to consider the public convenience and necessity in Motor Carrier Certificate divisions and sales which change the character of the motor carrier service available to the public, departmental construction to the contrary notwithstanding. We said in Railroad Commission of Texas v. Jackson, 157 Tex. 32, 299 S.W.2d 266:

> "The authorities seem to establish the proposition that when no 'new service' is established by the mere transfer of a permit, the issues before the Commission are those indicated by the Court of Civil Appeals, namely, good faith, adequate equipment, financial ability and willingness to abide with the law and the Commission's regulations. However, when the transfer will result in establishment of a substantially different service from that theretofore existing, we think the principle of the Red Arrow re-routing cases is applicable and that an issue of public convenience and necessity arises for the initial determination by the Commission. Railroad Commission of Texas v. Red Arrow Freight Lines, Tex.Civ.App., 96 S.W.2d 735, 738."

Houston & North Texas Motor Freight Lines v. Johnson, 140 Tex. 166, 166 S.W.2d 78, involved an originally issued common carrier certificate authorizing a through service from Dallas to Rising Star via Fort Worth. The owning carrier sought Commission approval of a division of the certificate so as to authorize two routes—one from Dallas to Fort Worth and one from Fort Worth to Rising Star so as to sell the route from Dallas to Fort Worth to another carrier. The controlling fact was that there would be a difference in the service available to the public resulting from the proposed division and sale. The Commission originally found that the public convenience and necessity required a one carrier through service between Dallas and Rising Star; as contemplated by the proposed division and sale, there would be two carriers with segments of the route involving, among other things, an interchange of freight at Fort Worth. In such situation, this Court recognized that the division of a certificate may present such a change in service to the public that the Railroad Commission is required to consider the question of the impairment of service to the public "in order to authorize the division of the existing certificate into two parts and the sale of one of the parts."

The majority cites L. A. Norris Truck Line v. Railroad Commission, Tex.Civ.App., 245 S.W.2d 746, wr. ref., as strongly persuasive, which, together with departmental construction, is determinative. Norris is not in point. The case merely considered orders of the Commission authorizing the division and sale of that part of an existing specialized motor carrier certificate authorizing the transportation of oil field equipment. Prior to the division and sale there was one carrier authorized to transport oil field equipment, together with other unrelated commodities. After the division and sale there was one carrier transporting oil field equipment and one carrier transporting the remaining commodities. There was no duplication or increase in the service to the public or in the use of the highways. No additional carrier service was created as to any commodity. There was no overlapping of territories or commodities. There was no significant change in the character of the service offered the public.

We cannot say that the statutory authorization for disapproval of certificate sales by the Commission when not in the public interest is meaningless, and that the orders of the Railroad Commission are to be upheld in every instance of approval of certificate division and sales, regardless of the public interest. If we do not say this, then

**330**

we must say that if certificate divisions and sales are contrary to the public interest, and to the reasonable intendments of the Motor Carrier Act, it is the duty of the Commission to disapprove. Here it appears that the Commission held no hearing and required no evidence upon, or considered, the effect of the certificate divisions and sales on the sales of the existing carriers, or whether the public convenience and necessity required the services authorized by the certificates created anew for purposes of sale.

The denial by the majority here of the application of the principles heretofore announced by this Court rests on the misconception that there was no change in the character of the motor carrier service available to the public when the operations of the one carrier, Jeter, under authority of the consolidated certificate, were converted into operations of four separate carriers under the orders of the Railroad Commission approving Jeter's divisions and sales, which are the orders under attack here. The majority can reach this view only by disregarding the legal effect of the previous orders approving Jeter's acquisition of all the certificates and the consolidation of the four certificates into one single service by Jeter, thereby looking to the original four certificates and the separate carrier services thereunder as if there had been no intervening orders of the Commission authorizing the change in the character of the original authorized services from four separate carriers to one. It is at this point that the majority view breaks down.

The majority does not hold that the action of the Commission approving the instant certificate divisions and sales is reasonably supported by the facts as not against the public interest. It holds that the Commission was under no duty to require evidence establishing public convenience and necessity which, under Article 911b, is the essence of the public interest. The fallacy of the majority is in the holding that although additional carriers are created there is "no change effected in the character of the service to be rendered." This is the crucial point of difference. I maintain that there is a substantial difference in the service to the public between that of the one carrier Jeter from the time of his certificate acquisitions and the services to the public of the four carriers authorized to operate in the overlapping territories as a result of the three new certificates and the sales of these certificates to the three new carriers. The validity of the approval orders of the Commission under attack should be determined in the light of this fact, and the doctrine of Jackson and Johnson is applicable.

I would reverse the judgments of the courts below and hold that the orders of the Railroad Commission under attack here are invalid.

WALKER and NORVELL, JJ., join in this dissent.