**RAILROAD COMMISSION of Texas et al., Appellants,**

v.

**BROWN EXPRESS, INC. et al., Appellees.**

**No. 11387.**

Court of Civil Appeals of Texas.

Austin.

Feb. 9, 1966.

Rehearing Denied March 9, 1966.

---

Waggoner Carr, Atty. Gen., Howard M. Fender, Sam Kelley, Asst. Attys. Gen., and Kelley, Looney, McLean & Littleton, and Rogers Kelley and Jackson Littleton, Edinburg, and Dean Moorhead, Austin, for appellants.

Baker, Botts, Shepherd & Coates, Edwin N. Bell, Houston; McKay & Avery and C. N. Avery, Jr., Austin; Mills, Shirley & Mc-Micken, Galveston; James, Robinson & Starnes and Phillip Robinson, Austin, for appellees.

PHILLIPS, Justice.

This suit was filed by appellees Brown Express, Inc., Central Freight Lines, Inc., Red Arrow Freight Lines, Inc., Red Ball Motor Freight, Inc., Santa Fe Trails Transportation Company and Southern Pacific Transport Company as an appeal from an order of the appellant Railroad Commission of Texas, dated November 12, 1964, wherein the Commission approved the sale and transfer by appellant Southern-Plaza Express, Inc., hereinafter called "Southern-Plaza," to appellant Ryder Truck Lines of Texas, Inc., hereinafter called "Ryder of Texas," of Common Carrier Motor Carrier Certificates Nos. 3739, 2054, 4014, 3605, 2119 and 3589. In their suit, appellees also attack a December 3, 1964 order of the Commission overruling a "complaint" which they filed in connection with certain aspects of the application to sell and the hearing thereon.

Appellees are competing motor carriers on the routes covered by the six Certificates, and they contested the sale in the proceedings before the Railroad Commission. Appellees' exceptions to the November 12,

1964 and December 3, 1964 orders were overruled by the Commission in two orders dated December 16, 1964, and appellees filed this suit one day later, securing a temporary restraining order at that time which, together with a subsequent temporary injunction, blocked the proposed sale and kept appellants under temporary restraint until entry of judgment by the trial court, nearly eight months later.

Trial without a jury was had the week of February 8, 1965; and on August 9, 1965, the District Court entered judgment setting aside and declaring void the Commission orders of November 12, 1964 and December 16, 1964 approving the sale, together with the orders of December 3, 1964 and December 16, 1964, pertaining to appellees' complaint. In addition, the judgment permanently enjoined the Railroad Commission from taking any further action pursuant to said orders in its Motor Carrier Docket No. A–1531 (the Docket on the application to sell), and permanently enjoined appellant Ryder of Texas from commencing or conducting any operations under the orders in that docket.

Appellants duly excepted to the judgment and gave notice of appeal to this Court.

We reverse and render the judgment of the trial court.

Appellants are before us with twenty-one points of error;[1] however they state that

---

1. The remaining points of error are as follows:

Point Four: The trial court erred in finding and concluding in paragraph 3 of its judgment that "At no time time during the several years of its existence prior to the entry of the orders under review did Ryder Truck Lines of Mo., Inc., file or keep on file with the Railroad Commission * * * any current schedules of service over the routes and between the points authorized to be served under the terms and provisions of" the six Certificates; there is no evidence to support such finding and conclusion; in the alternative, there is insufficient evidence to support the finding and conclusion; in the further alternative, the finding and conclusion is contrary to the overwhelming weight

and preponderance of the credible evidence; and, in any event, the finding and conclusion is immaterial and irrelevant with respect to any proper issue in this case.

Point Five: The trial court erred in finding and concluding in paragraph 3 of its judgment that "Southern-Plaza Express, Inc., and its predecessor, Ryder Truck Lines of Mo., Inc., in fact discontinued and failed to render scheduled service, or any other character of service, in Texas intrastate commerce at numerous terminal points and at many points and places on and along the routes authorized to be served" in the six Certificates and "discontinued and failed to maintain a level and frequency of service in interstate commerce in Texas sufficient to enable it to offer and

the following three points are sufficient to bring before us all of the questions involved in this appeal. These points are as follows:

"Point One: The trial court erred in setting aside and declaring void the

to render an active and competitive intrastate service at the remainder of the points authorized to be served under said Certificates;" there is no evidence to support such findings and conclusions; in the alternative, there is insufficient evidence to support such findings and conclusions; in the further alternative, the findings and conclusions are contrary to the overwhelming weight and preponderance of the credible evidence; and, in any event, the findings and conclusions are immaterial and irrelevant with respect to any proper issue in this case.

Point Six: The trial court erred in finding and concluding in paragraph 5 of its judgment that the questions of no service or insufficient service under the six Certificates, together with the question of whether the Certificates were in good standing and subject to transfer and the question of public interest if the Certificates were transferred, were before the trial court in Cause No. 137,014 and were determined on the merits against appellants in the judgment entered in said Cause; there is no evidence to support these findings and conclusions; and they are also legally unsupported.

Point Seven: The trial court erred in finding and concluding in paragraph 5 of its judgment that, if the orders here under review in Docket No. A–1531 were sustained, "new and substantially different competitive services could come into existence following such transfer as a result of revival and re-establishment of such abandoned and discontinued service;" there is no evidence to support such finding and conclusion; in the alternative, there is insufficient evidence to support such finding and conclusion; in the further alternative, the finding and conclusion is contrary to the overwhelming weight and preponderance of the credible evidence; and, in any event, the finding and conclusion is immaterial and irrelevant with respect to any proper issue in this case.

Point Eight: The trial court erred in the findings and conclusions made in paragraph 6 of its judgment concerning the transfer tax levied by the Motor Carrier Law; there is no evidence to

orders of the appellant Railroad Commission in Motor Carrier Docket No. A–1531, dated November 12, 1964 and December 16, 1964, wherein the Commission authorized appellant Southern-

support such findings and conclusions; in the alternative, there is insufficient evidence to support such findings and conclusions; in the further alternative, the findings and conclusions are contrary to the overwhelming weight and preponderance of the credible evidence; and, in any event, the findings and conclusions are immaterial and irrelevant with respect to any proper issue in this case.

Point Nine: The trial court erred in finding and concluding in paragraph 10 of its judgment that "Determination of the issue of whether a proposed transfer and sale of a common carrier certificate of public convenience and necessity would be 'best for the public interest' requires the Railroad Commission to consider" the questions narrated in said paragraph 10, including the question of public convenience and necessity.

Point Ten: The trial court erred in finding and concluding in paragraph 11 of its judgment that an express finding that approval of the proposed sale and transfer would be best for the public interest "is a mandatory prerequisite to an order approving transfer of these Certificates," and the court further erred by finding and concluding that "There is no substantial evidence to support either an express or implied finding that approval of said proposed sale and transfer would be best for the public interest."

Point Eleven: The trial court erred in finding and concluding in paragraph 12 of its judgment that there is no substantial evidence to support the finding in the Commission's order of November 12, 1964 that the application to sell and transfer was made in good faith.

Point Twelve: The trial court erred in finding and concluding in paragraph 13 of its judgment that there is no substantial evidence to support the finding in the Commission's order of November 12, 1964 that the purchaser is capable of performing and maintaining the service authorized in the six Certificates.

Point Thirteen: The trial court erred in finding and concluding in paragraph

Plaza to sell and transfer Common Carrier Motor Carrier Certificates Nos. 3737, 2054, 4014, 3605, 2119 and 3589 to appellant Ryder of Texas; and the trial court further erred in issuing its permanent injunctions against the appellant Railroad Commission and appellant Ryder of Texas.

Point Two: In setting aside and declaring void the orders in Motor Carrier Docket No. A–1531, the trial court

14 of its judgment that there is no substantial evidence to support the finding in the Commission's order of November 12, 1964 that the equipment proposed to be used by the purchaser meets the requirements of all applicable laws and regulations.

Point Fourteen: The trial court erred in finding and concluding in paragraph 15 of its judgment that there is no substantial evidence to support the finding in the Commission's order of November 12, 1964 that the purchaser agrees to conduct the motor carrier operation in the same manner as theretofore authorized.

Point Fifteen: The trial court erred in finding and concluding in paragraph 16 of its judgment that there is no substantial evidence to support the conclusion of the Railroad Commission in its order of November 12, 1964 that the application to sell and transfer should be approved.

Point Sixteen: The trial court erred in its finding and conclusion in paragraph 17 of its judgment that the orders in Docket No. 8–1531, dated November 12, 1964 and December 16, 1964 are unreasonable and unjust as to appellees.

Point Seventeen: The trial court erred in finding and concluding in paragraph 9 of its judgment that the Commission failed and refused to conduct a full and fair hearing in accordance with law in Motor Carrier Docket No. A–1531 in that the Hearing Examiner refused to permit appellees to develop evidence relating to whether the proposed sale was in good faith, whether the proposed purchaser was capable of rendering services demanded by public convenience and necessity, whether the proposed sale was best for the public interest, and whether the proposed purchaser met all requirements of law; there is no evidence to support such findings and conclusions; in the alternative, there is insufficient evidence to support such findings and conclusions; in the further alternative, the findings and conclusions are contrary to the overwhelming weight and preponderance of the credible evidence; and, in any event,

the findings and conclusions are immaterial and irrelevant with respect to any proper issue in this case.

Point Eighteen: The trial court erred in finding and concluding in paragraph 7 of its judgment that the complaint filed by appellees which is referred to in said paragraph was never heard by the Commission; there is no evidence to support such finding and conclusion; and the undisputed evidence is to the contrary.

Point Nineteen: The trial court erred in finding and concluding in paragraph 8 of its judgment that the Commission's orders of December 3, 1964, and December 16, 1964, in the Dockets pertaining to the six Certificates, and the action of the Commission reflected by the orders, were "arbitrary, unreasonsable, unjust and unlawful, and denied plaintiffs their rights guaranteed under Article 911b V.C.S., and denied plaintiffs Due Course of Law and Due Process of Law as guaranteed by Section 19 of Article I of the Constitution of Texas and the Fourteenth Amendment to the Constitution of the United States;" there is no evidence to support such findings and conclusions; in the alternative, there is insufficient evidence to support such findings and conclusions; in the further alternative, the findings and conclusions are contrary to the overwhelming weight and preponderance of the credible evidence; and, in any event, such findings and conclusions are immaterial and irrelevant with respect to any proper issue in this case.

Point Twenty: The trial court erred in finding and concluding in paragraph 18 of its judgment that there is no substantial evidence to support the finding and opinion expressed in the Commission's order of December 3, 1964, in the Dockets pertaining to the six Certificates, wherein the Commission overruled appellees' complaint.

Point Twenty-One: The trial court erred in finding and concluding in paragraph 19 of its judgment that the orders of December 3, 1964 and December 16, 1964, in the Dockets pertaining to the six Certificates, are unreasonable and unjust as to appellees.

erred in admitting evidence concerning so-called dormancy and concerning adequacy of service by other carriers, investments of other carriers, possible injury to such carriers, and the other constituent elements of public convenience and necessity; and the trial court further erred in basing its ruling upon such evidence, since neither public convenience and necessity nor dormancy is a proper issue in a sale and transfer proceeding.

Point Three: The trial court erred in setting aside and declaring void the orders of the appellant Railroad Commission, dated December 3, 1964, and December 16, 1964, overruling appellees' complaint."

The intrastate Certificates involved in this case are owned by appellant Southern-Plaza, which is a Missouri Corporation. That Corporation has had a continuous existence since its incorporation, however, it has undergone certain changes insofar as ownership of its capital stock and its name are concerned. As of the date of this appeal and when the Commission hearing was held and the orders involved in this case were issued, it has reverted to its original name of Southern-Plaza. It operates under that name and legal title to the six Certificates in question is in its name.

Prior to 1958, Southern-Plaza conducted intrastate operations under the six Certificates. Southern-Plaza also owned and operated certain interstate rights derived from the Interstate Commerce Commission.

The Ryder System, Inc. at that time was the parent Corporation of one of the largest carrier systems in the United States and its publicly owned stock is listed on the major exchanges. This parent corporation also operates through numerous subsidiaries.

Through a series of stock transfers between 1958 and 1964 involving the Ryder System, Inc. as parent Corporation and Ryder of Texas as a subsidiary, the Commission was asked to ratify former agreements between Ryder of Texas and Southern-Plaza which specifically provided that the latter would transfer the six Certificates in question to the former when and if Commission approval was had.

It is this contract and this contemplated transfer of the Certificates that is the heart of this lawsuit.

I.

The pertinent parts of the Texas Motor Carrier Law applicable here are as follows:

Section 3 of the Texas Motor Carrier Law (Article 911b Vernon's Ann.Tex.Civ. St.) provides in part:

"No motor carrier shall, after this Act goes into effect, operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation."

Elaborating upon this requirement, Section 8 provides:

"The Commission is hereby vested with power and authority, and it is hereby made its duty upon the filing of an application for a certificate of public convenience and necessity to ascertain and determine under such rules and regulations as it may promulgate, after considering existing transportation facilities, and the demand for, or need of additional service, if there exists a public necessity for such service, and if public convenience will be promoted by granting said application and permitting the operating of motor vehicles on the highways designated in such application as a common carrier for hire."

Section 9 specifies further matters which the Commission may and shall consider in making its ultimate decision as to the presence or absence of public convenience and necessity upon original issuance of a certificate, or denial thereof.

The first paragraph of Section 5 of the Law provides in part:

"No motor carrier shall hereafter operate as a common carrier for the transportation of property for compensation or hire over the public highways of this State without first having obtained from the Commission, under the provisions of this Act, a certificate declaring that the public convenience and necessity requires such operation; * * *."

Insofar as here material, the second paragraph of Section 5 provides:

"Any certificate held, owned or obtained by any motor carrier operating as a common carrier under the provisions of this Act may be sold, assigned, leased, transferred or inherited; provided, however, that any proposed sale, lease, assignment or transfer shall be first presented in writing to the Commission for its approval or disapproval, and the Commission may disapprove such proposed sale, assignment, lease or transfer if it be found and determined by the Commission that such proposed sale, assignment, lease or transfer is not in good faith or that the proposed purchaser, assignee, lessee or transferee is not able or capable of continuing the operation of the equipment proposed to be sold, assigned, leased or transferred in such manner as to render the services demanded by the public necessity and convenience on and along the designated route, or that said proposed sale, assignment, lease or transfer is not best for the public interest; the Commission, in approving or disapproving any sale, assignment, lease or transfer of any certificate, may take into consideration all of the requirements and qualifications of a regular applicant required in this Act and apply same as necessary qualifications of any proposed purchaser, assignee, lessee or transferee; * * *."

During the hearing before the examiner, counsel for appellees attempted to use witnesses to establish such matters as to the adequacy of existing service on the routes covered by the Certificates, the investments of the contesting carriers, and the adverse effects that those carriers would allegedly suffer if the sale was approved. Appellees proposed to put on evidence of exactly the same type that is ordinarily used to establish "public convenience and necessity" on the original issuance of the common carrier Certificate.

The examiner sustained objections to this type of evidence.

In addition to attempting to interject the matter of "public convenience and necessity" into the hearing, appellees also attempted to inject the doctrine of "dormancy" or "nonuser," contending that the six Certificates were not subject to sale because they had become dormant by alleged disuse.

The examiner also excluded this type of testimony from the hearing.

During the trial of the case, the trial court did not so limit the issues and permitted, over repeated objections of appellants, appellees to develop fully all of their evidence pertaining both to public convenience and necessity and to dormancy.

II.

The portions of the Motor Carrier Law set out above cover two entirely separate and distinct matters, viz. (1) the original issuance of the certificate; and (2) a subsequent sale or transfer of such certificate. Sections 3, 8 and 9, together with the first paragraph of Section 5, cover original issuance. The second paragraph of Section 5 deals with subsequent sale.

A prerequisite to orginal issuance is that the Railroad Commission act affirmatively. That it make an affirmative finding to the effect that public convenience and necessity require the operation.

No such prerequisite attends subsequent sales since the statute provides that, once issued, a certificate "may be sold, assigned * * * transferred," without the need for affirmative action or affirmative findings of any character. The Commission's only power over such sales is a veto whereby it *"may* disapprove" a proposed sale if it finds and determines that (1) the sale is not in good faith, (2) the purchaser is not capable of continuing the operation, or (3) the sale is not best for the public interest.

When the Commission enters an order originally issuing a certificate, the path is a familiar one. With judicial review being upon the basis of the substantial evidence rule, the court merely follows the procedure of determining whether the Commission's order is or is not supported by substantial evidence.

However, where, as in the case at bar, the Commission has issued an order approving a subsequent sale of a certificate, the problem of judicial review is entirely different. A Commission order approving such a sale is in effect an order of "no disapproval," since the statute itself grants the power to make the sale. Therefore, an order of approval is not necessary to confer the power of sale; and any such order can only mean that the Commission is refraining from exercising its veto power. Such an order does mean that the Commission has *not found that* (1) the sale is *not* in good faith; (2) the purchaser is *not* capable of continuing the operation, or (3) that the sale is *not* in the public interest.

We hold that the trial court erred in permitting the appellees to introduce testimony of either public convenience and necessity or of the question of dormancy or prolonged non-use of the certificate.

In its judgment, the trial court made numerous findings and conclusions concerning dormancy and such elements of public convenience and necessity as adequacy of service of other carriers, invest-ments by other carriers, and injury to other carriers. Evidently, the trial court's belief that such matters are both proper and necessary issues in a sale and transfer proceeding was the principal factor that lead to its invalidation of the orders of November 12, 1964, and December 16, 1964, approving the sale.

The Texas authorities, culminating with the decision of the Supreme Court in Tarry Moving & Storage Co. v. Railroad Commission, 367 S.W.2d 322, Tex.Sup.Ct.1963, wherein that Court affirmed a judgment of this Court, 359 S.W.2d 62, clearly hold that public convenience and necessity is not a proper issue in a sale and transfer proceeding such as the one at bar. Likewise, the decisions reveal that public convenience and necessity cannot be brought into a sale and tranfer proceeding under the guise that it is an element of the "public interest" or "capability" criteria referred to in the second paragraph of Section 5 of the Motor Carrier Law.

The Tarry case involved a specialized motor carrier certificate. Such certificates are governed by Section 5a of the Motor Carrier Law, rather than by Section 5. However, the two Sections are exactly alike in their frame-work, with each requiring a finding of public convenience and necessity upon original issuance and with each containing identical language giving the Commission the power to disapprove a proposed sale if it finds that the sale is not in good faith, the purchaser is incapable, or the sale would not be in the public interest.

In the Tarry case, four certificates had originally issued and had later been consolidated. At a later date, the consolidated certificate was divided into four certificates, thereby restoring the situation as it was upon original issuance. The owner then obtained Commission approval to sell three of the certificates to three separate individuals, retaining one certificate for himself. At the hearing, as in the case at bar, the Commission did not hear evidence pertaining to public convenience and necessity and

made no determination on that issue. In that case, as in the instant case, the opposing carriers contended that the Commission erred in failing to consider public convenience and necessity, urging that such issue was an element in the Commission's appraisal of "public interest" under the transfer portion of the statute.

In rejecting such contention, the Supreme Court said:

"We brought the case here to determine the principal point in controversey, to-wit: does Section 5a(a) of Article 911b, authorizing the Commission's disapproval of a sale if 'not best for the public interest' when construed in the light of other provisions of the statute, *impose the duty upon the Commission to consider the question of public convenience and necessity in passing upon the application to divide and sell the consolidated certificate or a part thereof under the facts above outlined?* We now concur with the Court of Civil Appeals in answering that question in the negative.

This exact question had not heretofore been passed upon by our appellate courts nor does the statute itself expressly provide an answer.

Tarry Company contends that this transaction comes squarely within Section 5a(a) which provides that before a specialized motor carrier certificate may be sold or transferred, an application therefor must be presented to the Commission and the Commission may disapprove if it determines that the sale is not (a) in good faith or (b) that the purchaser is unable to continue the operation so as to render the services demanded by public necessity and convenience or (c) that the sale is not best for the public interest. *It further contends that since the Commission did not in its hearing require any showing that this transaction was 'best for the public interest,' the orders of the Railroad Commission cannot stand and*

*must be stricken.* Tarry insists that when a certificate has been purchased and consolidated with another certificate, the two have been unified and merged into a single certificate; that the original certificate is dead and cannot be revived; that in fact and in law, the application here was for the issuance of three new certificates, and therefore it would require all the proof and procedure as outlined for a new certificate under the statute. Tarry argues that three additional carriers have been authorized by this order, which indicates necessity for the consideration of public interest. * * *

The Commission insists that the situation here no more affects the public interest than would be the case if the original four certificate holders had sought permission to sell their certificates to four other individuals. *Convenience and necessity for the service had already been determined, and by the sale the service would not be altered* where the Commission had found upon a hearing that the purchasers had bought in good faith and would continue the operation so as to render the service demanded by public interest and convenience.

In L. A. Norris Truck Line v. Railroad Commission, Tex.Civ.App., 245 S.W.2d 746, wr. ref., the application was to divide from the certificate and sell the right to transport oil-field equipment. The attack made on the Commission's order granting the application was based on the fact that there had been offered no evidence of public convenience and necessity to support that order. The Court of Civil Appeals in upholding the order observed: '*The question of necessity and convenience having been determined by the Commission at the time the original certificate was granted, there was no occasion to or authority for the reopening of such question upon the application for the sale and transfer of the divided por-*

*tion of the certificate.'* That holding is strongly persuasive in favor of the Commission's contention here. If the public interest need not be expressly shown where the application is to divide the certificate as to commodities, then it would be logical to assume that the public interest would not be impaired where the application is to divide the territory. In each case an additional carrier will be created, but no change effected in the character of the service to be rendered. See also Roberdeau et al. v. Railroad Commission, Tex.Civ. App., 239 S.W.2d 889.[2]

[2.]. Original opinion reinstated in Tex.Civ. App., 244 S.W.2d 887, wr. ref., n. r. e. (Footnote by the Court)

Tarry Company demonstrates the similarity between the Federal Interstate Commerce Act, Sec. 5(2) affecting unifications, mergers and acquisition of control, with 5a(a) of our act and cites certain federal decisions which lend support to its contention, among them being Southwest Transportation Company—Purchase—Johnson, 35 M. C.C. 437; McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544; and Pacific Intermountain Express Company—Control and Merger—Union Transfer Co., 12 F.C.C. 40724. These generally hold that operating rights may not be indefinitely removed from active use and preserved for subsequent transfer to an additional motor carrier when conditions may have materially changed in the territory both as to competition and traffic and to allow this practice would be inconsistent with the public interest.

We quite agree that the paramount consideration, in both State and Federal regulations controlling public transportation and common carriers, is that of the public interest. But whether in this case the old certificates lie dormant and thus are subject to sale with the Commission's approval or new cer-

tificates issued to the purchasers is largely theoretical.

It makes no practical difference whether we say the old certificates were revitalized or that new certificates were issued; the result of the division and sale is the same, at least so far as the public is concerned.

Tarry Company also cites Houston & North Texas [Motor] Freight Lines v. Johnson, 140 Tex. 166, 166 S.W.2d 78, for the proposition that in order to authorize the division of an existing certificate into two parts and the sale of one of the parts, the Commission should find that the division and sale will not impair the service to the public. In that case the holding was, that before an application to divide and sell a portion of the certificate could be approved, it must be considered and acted upon at a regular or called meeting of the Commission. Since that procedure had not been followed we reversed and remanded.

We did, however, take occasion to point out in view of the possibility of a later consideration of the matter, the Commission should take the matter of public interest into account. The application there sought to break up one through route into two connecting short routes, thus necessitating an interchange on commodities billed for shipment over the original through route, which in some instances might not serve the public as adequately as before the route was broken up. *The application called for a change in the character of service rendered.*

*It may reasonably be said that since the Commission has found in this case that (1) the purchaser is financially able and capable of maintaining the service authorized; (2) the equipment proposed to be used by him meets all requirements; (3) he agrees to conduct operations in the same manner as theretofore authorized; (4) the appli-*

*cation is made in good faith; and the further fact that the Commission found initially that 'convenience and necessity' required this service, the public interest has been sufficiently considered.*

There is substantial merit in Tarry's contention. The question is a close one; however, the scales are weighted with the departmental construction consistently given over the past 25 years, namely, that 'public convenience and necessity' is not involved in consolidations or divisions of specialized motor carrier certificates. The Director of the Motor Transportation Division, employed in that capacity since 1938, testified the Commission has allowed carriers to divide certificates since 1934 and that at the hearing on such an application no proof of convenience and necessity would be required. He further testified neither division nor consolidated orders change in any manner the authority which existed theretofore. * * *

Taking into consideration the Attorney General's opinion, the construction placed upon the statute by the Commission, and the custom and practice adhered to over a period of many years, we are constrained to hold that in acting upon the application here considered, it is not necessary for the Commission to require evidence establishing convenience and necessity." 367 S.W. 2d 323–325. (Emphasis added.)

The decision of the Supreme Court in the Tarry case covers every important aspect of the case at bar.

In the first place, the Supreme Court—construing the portion of Section 5a which, in language verbatim with the corresponding portion of Section 5, deals with sales and transfers held that the "public interest" provision of those two Sections does not "impose the duty upon the Commission to consider the question of public convenience and necessity," and that "it is not necessary

for the Commission to require evidence establishing convenience and necessity."

Secondly, in that case the Commission made the identical four findings in its order approving the sale that it made in its order in the instant case, to-wit, that:

"(1) the purchaser is financially able and capable of performing and maintaining the service as authorized by such certificate; (2) that the equipment proposed to be used in such operation by the purchaser meets the requirements of the law and the rules and regulations of this Commission in respect to safety devices, dimensions, etc.; (3) that the purchaser agrees to conduct such motor truck operation in the same manner as heretofore authorized; and (4) the application to sell and transfer is made in good faith."

These four findings did not include any specific finding by the Commission, one way or the other, on the matter of "public interest." In Tarry, as in the case at bar, the protesting carriers made much of the fact that the Commission did not make any express finding on public interest. In that regard, the Supreme Court said:

"It may reasonably be said that since the Commission has found in this case (the Court then recited the four findings quoted above); and the further fact that the Commission found initially that 'convenience and necessity' required this service, the public interest has been sufficiently considered." 367 S.W.2d at 325.

█ This statement disposes of appellees' argument herein that the Commission order of November 12, 1964, is somehow fatally defective because it does not include any express, specific finding on public interest. In making such statement, the Supreme Court was, as it pointed out in its opinion, expressing the same thought that had earlier been expressed by this Court in L. A. Norris Truck Line v. Railroad Com-

mission, 245 S.W.2d 746 at 748 (refused, 1952) as follows:

"The question of necessity and convenience having been determined by the Commission at the time the original certificate was granted, there was no occasion to or authority for the reopening of such question upon the application for the sale and transfer of the divided portion of the certificate."

Thirdly, in the Tarry case the opposing carriers tried to get the Supreme Court to accept their dormancy theory by arguing that the Texas statute was comparable in this respect to the ICC Act, and they urged upon the Court Interstate Commerce Commission decisions of the same type as those that appellees have urged here. As the foregoing quotation from the opinion in the Tarry case reveals, the Supreme Court made mention of the ICC decisions cited by the opposing carriers and then refused to follow the dormancy theory.

As a fourth matter, the Court made mention of its earlier decision in Houston & North Texas Motor Freight Lines v. Johnson, 140 Tex. 166, 166 S.W.2d 78 (1942), wherein the Court had said that, upon reconsideration, the Commission should find that the division of the certificate and "sale of a part thereof will not impair the service to the public," and the Court explained that statement in the Johnson case by saying "The application called for a change in the character of service rendered"—which explanation is what distinguishes the case at bar from that involved in Railroad Commission v. Jackson, 157 Tex. 32, 299 S.W.2d 266 (1957), a case upon which appellees place primary reliance herein.

Finally, in the Tarry case, the Supreme Court attached great importance to the testimony by the "Director of the Motor Transportation Division, employed in that capacity since 1938" concerning departmental construction and departmental practices. As is stated in the opinion of this Court in the Tarry case, the Director of the Motor Transportation Division referred to

by the Supreme Court was Mr. Horace Soule, the same gentleman who testified on behalf of appellants concerning departmental practices and construction in the instant case. Concerning Mr. Soule's testimony, this Court said:

"Mr. Soule in his capacity as Director of the Motor Transportation Division of the Railroad Commission is in charge of administering the provisions of Art. 911b, V.C.S., under the supervision and direction of the Railroad Commission of Texas. In such capacity as well as in his capacity as Examiner for the Motor Transportation Division over a period of almost twenty five years he was eminently qualified to testify as to the long standing departmental construction and interpretation of the statutory provisions by the Railroad Commission of Texas. Departmental construction or interpretation of the statutory provisions which an administrative body or board is empowered to enforce need not be reduced to written words to become effective nor is departmental construction or interpretation of a statute necessarily found in rules and regulations which such administrative body or board by law is authorized to promulgate. Therefore the Trial Court did not err in admitting the testimony of Mr. Horace Soule in his official capacity as Director and Examiner of the Motor Transportation Division of the Railroad Commission of Texas as to the departmental construction and interpretation by the Commission over a long period of time of the powers and authority granted it under the provisions of Art. 911b." 359 S.W.2d 62 at 67 (1962).

In the case at bar, Mr. Soule gave exactly the same kind of testimony that he did in the Tarry case and much more.

Thus, as he did in the Tarry case, Mr. Soule testified that the Commission has never required, or permitted, testimony con-

cerning public convenience and necessity in a sale and transfer proceeding, or deemed that to be a proper issue in such a proceeding. Additionally, he testified that the Commission has never adopted or followed any theory of dormancy—that the Commission merely determines administratively whether a certificate that is the subject of a proposed sale is "in good standing" insofar as reports, registration, insurance, fees, etc., are concerned; and, if the certificate is found to be in good standing in accordance with those standards, that the application for sale is set down for hearing, with no consideration being given to so-called dormancy.

### III.

In addition, with respect to the 10% tax for the Highway Fund which is levied by the Texas Motor Carrier Law, Mr. Soule testified that the Commission has always followed the literal language of the Statute (Sections 5 and 5a) and has applied the 10% figure to the "amount paid as a consideration" for the certificate regardless of what the market value or the appraised value of the certificate might be. Furthermore, he stated that in transactions between a parent and a subsidiary, or other members of the same "corporate family," the Commission considers the transfer to be in the nature of moving the certificate from one pocket to the other and customarily accepts the amount stated in the application as being the amount of consideration "paid."

### IV.

Consequently, five vital facets of the case at bar were ruled on by the Supreme Court in the Tarry case, either squarely or by necessary implication; (1) Section 5, like Section 5a, does not "impose the duty upon the Commission to consider the question of public convenience and necessity" in a transfer proceeding. (2) The four findings made in the Tarry case, which are identical to the four made in the instant case, plus "the further fact that the Commission

found initially that 'convenience and necessity' required this service," demonstrate that "the public interest has been sufficiently considered." (3) The ICC decisions and the dormancy theory upon which appellees rely were rejected by the Supreme Court. (4) The Jackson case, upon which appellees also place reliance, is explainable upon the same ground by which the Supreme Court explained the Johnson case in its opinion in Tarry, viz., that the sale contemplated therein would create a new type of service. (5) The testimony of Mr. Soule concerning departmental practices and policies is of much importance and carries great weight.

Nor does the Supreme Court's decision in the Tarry case stand alone in its ruling on several of these matters. As the Court's opinion reflects, in rejecting the contention that public convenience and necessity is a proper issue, the Court followed the earlier decision to the same effect by this Court in the Norris case, wherein the Supreme Court had refused a writ. As will hereinafter be pointed out, in addition to being rejected in Tarry, appellees' dormancy doctrine was also rejected by this Court in the Norris case.

In addition, when the Tarry case was before it, this Court ruled:

"Under their 6th point of error appellants contend that the Commission's order authorizing the sale from Jeter to Hafmeister contains no findings required by Section 5a(a), Art. 911b, and does not meet the requirements of Sec. 6(d), Art. 911b, and is therefore void. Under the provisions of Section 5a(a) *the Commission is not required to make findings of any nature on its approval of the sale and transfer* of the certificate *but the only findings required are to be made by the Commission in the event that it disapproves the sale for one of the reasons authorized for disapproval.* The provisions of Sec. 6(d), Art. 911b, *apply only in the granting of new certificates* and therefore are not

applicable here." 359 S.W.2d at 66. (Emphasis added.)

These statements to the effect indicate that an order of approval in this type of case is nothing more or less than an order of "no disapproval," for which no findings are required and which merely removes the possibility of a veto and thereby clears the way for the parties to exercise the power of sale that the statute itself grants them. Additionally, these statements point up the conceptual difficulties, also referred to above, of attempting to apply the substantial evidence rule to negative action of this character where no findings are required.

Finally, as the Supreme Court noted in its opinion in Tarry, Roberdeau v. Railroad Commission, Tex.Civ.App., 239 S.W.2d 889 (1951), original opinion reinstated, 244 S.W.2d 887, n. r. e. 1951, also lends support to the views above expressed. As this Court said in Tarry, referring to Roberdeau, "practically the same questions involved herein were (there) decided adversely to appellants' contention." [3] 359 S.W.2d at 66.

Therefore, appellees' contention that the issue of public convenience and necessity must be considered by the Commission in a sale and transfer proceeding, because it is an element of the "public interest" referred to in Sections 5 and 5a, is by no means a novel theory, and the case at bar is by no means a case of first impression on that point. The theory has been twice advanced before the Supreme Court and has been twice rejected by it, first by its refusal of a writ in the Norris case, and next by its ruling in Tarry, plus its reiteration therein of its endorsement of Norris.[4] Additionally, the theory has been thrice rejected by this Court—in Norris, in Roberdeau and in Tarry.

## IV.

With respect to appellees' contention and with the court's judgment pertaining thereto respecting the refusal of the Commission to entertain their complaint under Section 12(b) of the Motor Carrier Law providing as follows:

"The Commission at any time after hearing, had, upon notice to the holder of any certificate or permit and after opportunity given such holder to be heard, may by its order revoke, suspend or amend any certificate or permit issued under the provisions of this Act, where in such hearing the Commission shall find that such certificate or permit holder has discontinued operation or has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or has violated the terms of said certificate or permit; provided, that the holder of such certificate or permit shall have the right of appeal as provided in this Act."

■ It will be noted that this statute is permissive in nature and says only that, upon a finding of discontinuance of operations, the Commission "may" revoke a certificate, not that it "must." In Attorney General's Opinion No. 0–3558, dated June 5, 1941, the Railroad Commission submitted questions concerning a carrier who ceased regular service as authorized to the City of Seguin and began serving that City with a highly irregular schedule. One of the questions submitted was as follows:

"Where an applicant presents proof of public convenience and necessity and of inadequacy of existing facilities and thereby obtains a certificate of public convenience and necessity (intrastate)

---

3. Also, in Roberdeau, this Court emphasized the importance of the departmental practices and policies by the Railroad Commission in a case of this character, 239 S.W.2d at 895, thereby foreshadowing its similar comments in Tarry some eleven years later.

4. Additionally, in Railroad Commission of Texas v. Jackson, 157 Tex. 32, 299 S.W. 2d 266 (1957), the Supreme Court observed " * * * as the usual thing, the transfer of a certificate from one carrier to another does not involve the issue of public convenience and necessity * * *."

on the theory that he is going to render a regular service and then renders irregular service, is it mandatory upon this Commission in such case to cancel his certificate?"

With respect to such question, the Attorney General said:

"We do not believe that a carrier's failure always to operate its certificate over a particular part of its line in accordance with the terms of the certificate will always necessarily require the Commission to enter an order revoking, suspending or amending the same, regardless of reasons which might exist to justify such failure. There is left in the Commission at least a certain amount of discretion in respect to such matters. The statute does not say that such a failure will automatically work a forfeiture of the right to operate a line in connection with which such failure occurs, nor does it say that the Commission must enter an order of revocation, suspension or amendment. * * *

* * * The substitution of irregular schedules in practice would not necessarily make it incumbent upon the Commission to cancel the certificate."

One of the grievances about which appellees complained in the trial court, and with respect to which the trial court made findings and conclusions, was that they filed a "complaint" with the Commission requesting the Commission to invoke its Section 12(b) jurisdiction and cancel the certificates in question, which complaint the Commission refused to entertain and overruled. With respect to such complaint the Commission refused to entertain and overruled. With respect to such complaints, this Court said in Stotts v. Railroad Commission, Tex.Civ.App., 236 S.W.2d 210, writ refused, 1951:

"We have been cited to no statute and have found none, requiring a complaint to be lodged with the Commission as a prerequisite to exercise of the author-

ity conferred on the Commission by the above statute."

■■■ As this statement reflects, there is no statute which provides that, upon filing of a complaint, the Commission *must* inevitably call a Section 12(b) hearing, nor is there any statute that even contemplates such complaints. If the Commission has discretion whatever under Section 12(b), it must have discretion to refuse to call a hearing in response to any and all complaints, especially when the statute nowhere provides that the Commission's jurisdiction shall be initiated by the filing of a complaint and, indeed, when the statute is completely silent on the subject of complaints.

Moreover, under the permissive "may revoke" language of Section 12(b), particularly as that language was construed by the Attorney General nearly a quarter of a century ago, even if the Commission had called a hearing in response to appellees' complaint and had found as a fact that operations under the certificates had wholly or partially been discontinued, revocation of the certificates would not automatically follow from such finding; and, notwithstanding such finding, the Commission would still have retained discretion to revoke or not revoke as it deemed proper.

While the statute itself is silent on the matter of complaints, such matter is referred to in the Commission's Rule 59 as follows:

"The Commission, either on its own motion or upon receipt of sufficient written complaints, *may* at any time after legal notice to all interested parties cite anyone operating under its jurisdiction to appear before it in a public hearing and require it to show cause why his or its operating authority should not be cancelled, or otherwise restricted and limited. * * *" (Emphasis added.)

It will be noticed that this Rule tracks the statute and also uses only the permissive word "may," rather than providing that under any and all circumstances the Com-

**878**

mission "must" call a hearing upon receipt of a complaint. Moreover, in addition to this discretion, the Rule plainly reserves unto the Commission the sole discretion to determine what constitutes a "sufficient" written complaint within the meaning of the Rule.

Consequently, appellees had no absolute vested right to require the Commission to call and conduct a hearing merely because they had filed a complaint, and the Commission violated no duty when it refused to do so. Additionally, even if the Commission had called the hearing and had found that there was a partial or total discontinuance of operations, appellees would not thereby have acquired any kind of right to require the Commission to revoke the certificates, and the Commission would have breached no duty had it failed to do so.

We reverse the judgment of the trial court and render judgment upholding the Railroad Commission orders of November 12, 1964, December 3, 1964 and December 16, 1964 and set aside and dissolve the permanent injunctions issued by the trial court.

Reversed and rendered.