**BROWN EXPRESS, INC., et al., Petitioners,**

v.

**RAILROAD COMMISSION of Texas et al.,
Respondents.**

No. A-11381.

Supreme Court of Texas.

April 12, 1967.

Rehearing Denied June 21, 1967.

McKay & Avery, C. N. Avery, Jr., Austin, Mills, Shirley & McMicken, Galveston, James, Robinson, Felts & Starnes, Phillip Robinson, Austin, for petitioners.

Crawford C. Martin, Atty. Gen., Sam Kelley, Asst. Atty. Gen., Austin, Kelley, Looney, McLean & Littleton, Jackson Littleton and Rogers Kelley, Edinburg, Dean Moorhead, Austin, for respondents.

POPE, Justice.

The Railroad Commission entered an order approving a transfer of six certificates owned by Southern Plaza Express,

Inc. Brown Express and a number of other interested motor carriers filed a complaint with the Railroad Commission in which they asserted that the certificates should be revoked. The Commission refused to hear the complaining carriers' complaint and their evidence that the transfer was not for the public convenience and necessity. The questions presented are whether the Commission acted arbitrarily (1) in approving the transfer and (2) in overruling the complaint without hearing the proffered evidence. The trial court on appeal set aside the Commission orders. The court of civil appeals reversed the judgment of the trial court and sustained the Commission orders. 399 S.W.2d 863. We reverse the judgment of the court of civil appeals and affirm that of the district court.

Southern Plaza is the owner of intrastate common carrier certificates numbered 3739, 2054, 4014, 3589, 3605, and 2119. Southern-Plaza was formerly known as Ryder Truck Lines of Missouri but, during the course of these proceedings, changed its corporate name. On June 29, 1964, Ryder Truck Lines of Missouri (Southern Plaza) contracted to sell and transfer the six certificates to Ryder Truck Lines of Texas for $1,000. The next day the corporations filed an application with the Railroad Commission for its approval of the sale and transfer. Brown Express and other competing carriers filed a protest to Ryder's application for the approval of the sale and transfer. They also filed a complaint with the Commission in which they asserted that the six certificates should be revoked for Ryder's failure to comply with the terms of the certificates. The Commission assigned docket number A–1531 to the transfer application and dockets numbered 3839, 2054, 4014, 3589, 3605, and 2119 to the complaints. Hearing in the sale and transfer proceeding began on September 16, 1964. The protesting carriers tendered but were not permitted to introduce evidence that no public convenience and necessity for the

transfer existed. Their theory was that the transfer of the certificates to Ryder Truck Lines of Texas, Inc. who would fully operate the certificates constituted the authorization of new services. The complaining carriers also offered proof of non-operation of the certificates for such a period of time that they were subject to revocation. To this offer, the hearing examiner ruled:

"*THE EXAMINER:* 'It has nothing to do with the sale of the certificates. I am not going to listen to the issue of dormancy. In the first place, the Railroad Commission has no such proceeding. If we did have such a proceeding, it would be a show cause proceeding and would be instituted by the Commission. As long as these certificates are shown to be in good standing, we are not going into the subject of dormancy, nor convenience and necessity. * * * This is purely a hearing on sale and transfer, and I am not going to get into the issue of dormancy.'

"* * *

" 'There is no proceeding, as counsel well knows, before the Railroad Commission for abandonment. There is no proceeding before me at this time with reference to failure to operate, which is a statutory definition, and, consequently, I can't see where this testimony would be pertinent to the issue, and it will not be received.'

"* * *

" 'They are not dormant, as far as the Railroad Commission is concerned. I am not going to hear any further testimony in accordance with what counsel has outlined. I don't think it is relevant to this hearing.' "

The complaining carriers insisted that they be granted a hearing on their complaint. On October 5, 1964, they filed a motion requesting that the complaint be set for hearing. They also filed a motion that the Commission defer action on

the transfer application until the issue of the good standing of the certificates was heard and decided. They again tendered evidence in the transfer hearing that would bear upon their complaint. The Commission overruled all of these motions, and the complaining carriers were never accorded an opportunity to be heard on the complaint issue in either the transfer or complaint proceedings.

On November 12, the Commission approved the sale and transfer of the certificates. The order provided, among other things, that "all motions, complaints or ancillary matters previously filed in connection with this application are * * * expressly overruled * * *." On December 3, 1964, the Commission overruled the complainants' motion to set the complaint for hearing stating its reasons in the following order:

"The Commission has, subsequent to the filing of this complaint, heard the application for the sale and transfer of these certificates in another Docket and is of the opinion that this motion filed on July 7, 1964, should be in all things overruled."

The complainants then appealed from both orders of the Commission which were heard together by the trial court.

■■■ The Commission properly excluded the evidence about public convenience and necessity. That issue was determined upon the original authorization of the certificates. Section 5 of art. 911b, Vernon's Ann.Civ.St., states the nature of the proof an applicant must make to obtain the Commission's authorization of a transfer order. The applicant must show (1) the transfer is in good faith, (2) the successor to the certificate is able and capable of continuing the operation of the equipment "in such a manner as to render the services demanded by the public neces-

sity and convenience * * *," and (3) the proposed sale is for the public interest.

This court in Tarry Moving & Storage Co. v. Railroad Commission, 367 S.W.2d 322 (Tex.1963) rejected the contention that public convenience and necessity was an issue in a hearing to divide a certificate as to territory, although an additional carrier would be created, since there would be no change in the character of the service to be rendered. The court relied upon L. A. Norris Truck Line v. Railroad Commission, 245 S.W.2d 746 (Tex.Civ.App. 1952, writ ref.) which held that public convenience and necessity need not be considered in an application to divide a certificate as to commodities. Only when the orders will create or establish a new service about which there has never been a finding of public convenience and necessity must the issue be determined. Railroad Commission of Texas v. Jackson, 157 Tex. 32, 299 S.W.2d 266 (1957). Upon the basis of these authorities, the Commission correctly denied the protestants' offer of proof that there was no public convenience and necessity for transfer of existing certificates.

■■■ The Commission acted arbitrarily, however, in overruling the complaint filed by the protesting carriers without granting them a hearing. See, Stotts v. Railroad Commission, 236 S.W.2d 210 (Tex. Civ.App. 1951, writ ref.); Wattenburger v. Railroad Commission of Texas, 231 S. W.2d 924 (Tex.Civ.App.1950, writ ref. n. r. e.). Since the protesting carriers operate over the routes and serve the points encompassed in the six certificates which are the subject of the transfer hearing, they are interested parties. Railroad Commission of Texas v. Red Arrow Freight Lines, Inc., 96 S.W.2d 735 (Tex.Civ.App. 1936, writ ref.). Being interested parties, they could complain about the transfer of a certificate which had no stand-

ing. Sections 12(b) [1] and 14(a) [2], art. 911b recognize their right to make complaints. See, Railroad Commission v. Winkle, 57 S.W.2d 287 (Tex.Civ.App.1933), affirmed in Texas & Pacific Motor Transfer Co. v. Railroad Commission, 124 Tex. 126, 73 S.W.2d 509 (1934). The Commission's Rule 59 further recognizes an interested carrier's right to complain.[3]

The Commission made its final decision that the certificates are not subject to revocation without holding a hearing and receiving evidence. Complaints against certificate holders in the past have been determined by hearings after notice. Texas & Pacific Motor Transfer Co. v. Railroad Commission, supra; Wattenburger v. Railroad Commission of Texas, supra. A denial of the right to be heard is not excused by section 12(b) which permissively states that the Commission "may" revoke certificates if a holder discontinues operations or violates the terms of the certificate or the Commission's rules. Texas & Pacific Motor Transfer Co. v. Railroad Commission, supra. The power of the Commission to exercise its discretion after a hearing cannot be construed as the power to overrule a complaint without a hearing. The complaining carriers endeavored to get a hearing both in the transfer hearing and the complaint proceedings. The Commission first excluded the complainants' evidence in the transfer hearing and then overruled their motion for a complaint hearing on the grounds that the order in the transfer hearing rendered the issue immaterial. Evidence that the certificates are subject to revocation is material to the issue of the good standing of the certificates but has not yet been considered. The Commission's refusal to hear the complaining carriers' proof was arbitrary. Railroad Commission v. Alamo Express, Inc., 158 Tex. 58, 308 S.W.2d 843 (1958).

■ The Commission says that its departmental practice is to hear transfer applications without regard to a complaint which attacks the standing of the certificate in question. Departmental practice is important when an administrative agency is confronted with an ambiguous statute, but it affords no basis for practices which are contrary to the plain meaning of statutes. Eddins-Walcher Butane Co. v. Calvert, 156 Tex. 587, 298 S.W.2d 93 (1957); Humble Oil & Refining Co. v. State, 158 S.W.2d 336 (Tex.Civ.App.1942, writ ref.). Sections 12(b) and 14(a) of

1. "The Commission at any time after hearing, had, upon notice to the holder of any certificate or permit and after opportunity given such holder to be heard, may by its order revoke, suspend or amend any certificate or permit issued under the provisions of this Act, where in such hearing the Commission shall find that such certificate or permit holder has discontinued operation or has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or has violated the terms of said certificate or permit; provided, that the holder of such certificate or permit shall have the right of appeal as provided in this Act."

2. "The Commission shall have the power and authority under this Act to hear and determine all applications of motor carriers; to determine complaints presented to it by such carrier, by any public official, or by any citizen having an interest in the subject matter of the complaint, or it may institute and investigate any matter pertaining to motor carriers upon its own motion. The Commission, or any member thereof, or authorized representative or Examiner of the Commission, shall have power to compel the attendance of witnesses, swear witnesses, take their testimony under oath, make record thereof, and if such record is made under the direction of a Commissioner, or authorized representative or Examiner of the Commission, a majority of the Commission may, upon the record, render judgment as if the case had been heard before a majority of the members of the Commission. * * *."

3. "The Commission, either on its own motion or upon receipt of sufficient written complaints, may at any time after legal notice to all interested parties cite anyone operating under its jurisdiction to appear before it in a public hearing and require it to show cause why his or its operating authority should not be cancelled, or otherwise restricted and limited * * *."

art. 911b, as well as Commission rule 59, supra, plainly contemplate a hearing before a complaint is adjudicated.

We find no evidence in the record which supports the Commission's argument that it had a departmental practice of disregarding a pending complaint in acting upon a transfer application. Mr. Soule, the Director of Transportation for the Commission, testified that upon the filing of each transfer, the Commission makes a routine check to determine whether the applicant has maintained insurance and properly registered its equipment. If the applicant has met those requirements, the certificate is treated as one in good standing. Whether the certificates have been properly operated is not investigated. The only matter considered, according to Mr. Soule, is whether the purchaser of the certificate is capable of operating it. This evidence does not reach the question presented by this case. Mr. Soule's testimony concerns the usual situation in which no complaint is filed by interested parties. Neither Mr. Soule nor anyone else testified about any Commission practice for handling a bona fide complaint asserted against the good standing of a certificate which is the subject of a pending application.

The proof in fact shows that the Commission conditions its approval of a transfer application upon proof of the good standing of the certificates at the time of the transfer. The Commission has prescribed forms for use by applicants in transfer proceedings. They are the only evidence in this record of the departmental practice, and they embody the Commission's departmental construction of the law. See Huey & Philp Hardware Co. v. Shepperd, 151 Tex. 462, 251 S.W.2d 515 (1952). Southern Plaza's application for transfer was made on the Commission's prescribed form which contained these words:

"The operation is to be continued by the seller or lessor until the final approval of the sale and transfer, or lease, by the Commission, and the *final approval of the sale, transfer, assignment or lease by the Commission is subject to the certificate or certificates being in good standing, and not subject to cancellation for failure to comply with the requirements of the law, rules and regulations of the Commission with respect to proper insurance, plate and tax fees and cab cards, or cancellation for other reasons authorized by law.*" (Emphasis added)

There is sound reason for such a requirement of proof of good standing in transfer hearings. It is stated in T. S. C. Motor Freight Lines v. Vanway Express Co., 148 S.W.2d 899, 903 (Tex.Civ.App. 1941, writ dism. judgm. cor.): "It follows, therefore, that the approval by the Commission in May 1939, of the sale and transfer of certificates no longer in force, could vest no rights thereunder in the purchaser." Section 5 of art. 911b requires a transferee to pay the State for the credit of the Highway Fund ten per cent of the amount paid as a consideration for the sale of a certificate. It would be unconscionable for the State to collect the ten per cent of the sale price and later determine that the transfer which it had approved was of invalid certificates.

We do not hold that the Commission should have revoked the certificates. Texas & Pacific Motor Transfer Co. v. Railroad Commission, supra. We hold that the order overruling the complaints without a hearing was arbitrary. Railroad Commission v. Red Arrow Freight Lines, Inc., supra. We accordingly reverse the judgment of the court of civil appeals and affirm that of the trial court which set aside the orders of the Railroad Commission.

GRIFFIN, SMITH, NORVELL and HAMILTON, JJ., dissenting.

GRIFFIN, Justice (dissenting).

On June 30, 1964, Ryder Truck Lines of Mo. requested Railroad Commission approval of its sale of six certificates of convenience and necessity to its wholly owned

subsidiary, Ryder Truck Lines of Texas, Inc. Being a corporate inter family transaction, the consideration for the sale or transfer was $1,000.00. Thereafter on July 7, 1964, Brown Express, Inc. and other competitors of Ryder Truck Lines of Mo. filed a complaint with the Railroad Commission under the provisions of Article 911b, § 12(b) and 14(a), asserting, in effect, that the six certificates sought to be transferred were dormant.[1]

While the application for the approval of the sale was pending, the parent corporation, Ryder System, Inc. sold all the corporate stock of Ryder Truck Lines of Mo., Inc. to Lee A. Hyde, Sr. This transaction was subject to the sale of the six certificates in controversy to Ryder Truck Lines of Texas, Inc. (which remained a Ryder System subsidiary). Hyde changed the corporate name of Ryder Truck Lines of Mo., Inc. to Southern Plaza Express, Inc. The purpose of these transactions was to vest title to the six certificates in a Ryder System subsidiary and thus except them from the sale to Hyde. It may perhaps also be inferred that this was done so that the subsidiary corporation could be sold to another carrier by Ryder System, Inc. It is suggested that this might result in a tax saving and there is evidence that Ryder System, Inc. had been offered $800,000.00 for the certificates. However, there is nothing illegal about the sale of corporate capital stock and the matter involved in this litigation is the transfer of six certificates of convenience and necessity from one Ryder corporation to another, or as stated in the respondents' brief, the transfer of assets from one Ryder pocket to another.

The Commission refused to consider petitioners' claim of dormancy because under its established practice, that question was not considered an issue upon a hearing held to determine whether or not a sale of certificates should be approved. The sale of such certificates to Ryder Truck Lines of Texas, Inc. was ultimately approved on November 12, 1964.

This Court has now held that actually there are two orders or matters involved here, namely, the question of the dormancy of the certificates and the question of approving the sale from Ryder of Mo. to Ryder of Texas. The Court has held that the order approving the sale must fall because the Commission did not first determine the issue of dormancy before approving the sale. The effect of this holding is to make dormancy a possible issue in every application for the approval of a sale of a certificate of convenience and necessity. I cannot agree to such holding. The approval of a sale and the cancellation of a permit for dormancy are two different things and to insert the issue of dormancy into the sale approval process is to encourage delay and obstruction.

The Motor Carrier Act, Article 911b, Vernon's Ann.Tex.Stats., was originally adopted in 1929 and from that date to the present time, the Commission has never construed the Act as requiring that a hearing as to dormancy should be held prior to or along with a hearing to determine whether a sale of a certificate should be approved by the Commission. This Court's decision overturns an administrative ruling of some thirty-five years' standing upon the stated theory that a competitor's economic position might be weakened by such sale. We may now expect most sales of certificates to be contested upon a claim of dormancy because delay if nothing else may be gained thereby.

This is not a case in which a "new service" is brought about by a combination of existing certificates, and despite repeated holdings, by this Court that where no "new

---

1. The words "dormant" and "dormancy" are used by the petitioner as designating a condition described in Article 911b, § 12(b), Vernon's Ann.Tex.Stats. as existing when a certificate holder "has discontinued operation, or has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or has violated the terms of said certificate or permit". Petitioner's primary complaint here relates to an alleged discontinuance of operations. In this dissent, I shall follow the nomenclature used by petitioners.

service" is involved, the issue of convenience and necessity is not at issue, the majority opinion now allows competing carriers, in effect, to litigate such issue under the guise of a dormancy proceeding.

It seems undisputed that the six certificates here involved, which the competing carriers assert are dormant and hence inoperative, have a substantial market value. The Motor Carrier Act provides that certificates of convenience and necessity may be bought and sold. Heretofore, the approval of a sale was determined by well-recognized rules followed by the industry and the Railroad Commission. The effect of the Court's holding will obviously be to introduce a new and uncertain factor which will affect the proposed sale of many certificates hereafter. The effect upon the market of such certificates will be unfortunate for with every purchase the purchaser will acquire not only a chance to obtain a certificate but a lawsuit as well.

I agree with the Court of Civil Appeals that this case is, or should be, controlled by Tarry Moving & Storage Company v. Railroad Commission, 367 S.W.2d 322 (Tex. Sup.1963), wherein it was pointed out that the Commission's authority over a proposed sale of certificates of convenience and necessity was "a veto whereby it 'may disapprove' a proposed sale, if it finds and determines that (1) the sale is not in good faith, (2) the purchaser is not capable of continuing the operation, or (3) the sale is not best for the public interest".

The Court of Civil Appeals correctly pointed out the difference in the statutes providing for issuance of an original certificate to a motor carrier to operate, and the sale and transfer of existing operating certificates as follows:

"A prerequisite to original issuance is that the Railroad Commission act affirmatively. That it make an affirmative finding to the effect that public convenience and necessity require the operation.

"No such prerequisite attends subsequent sales since the statute provides that, once issued, a certificate 'may be sold, assigned * * * transferred,' without the need for affirmative action or affirmative findings of any character. The Commission's only power over such sales is a veto whereby it '*may* disapprove' a proposed sale if it finds and determines that (1) the sale is not in good faith, (2) the purchaser is not capable of continuing the operation, or (3) the sale is not best for the public interest.

\* \* \* \* \* \*

"However, where, as in the case at bar, the Commission has issued an order approving a subsequent sale of a certificate, the problem of judicial review is entirely different. A Commission order approving such a sale is in effect an order of 'no disapproval,' since the statute itself grants the power to make the sale. Therefore, an order of approval is not necessary to confer the power of sale; and any such order can only mean that the Commission is refraining from exercising its veto power. Such an order does mean that the Commission has *not found that* (1) the sale is *not* in good faith; (2) the purchaser is *not* capable of continuing the operation, or (3) that the sale is *not* in the public interest." (399 S.W.2d 869–70. All emphasis that of the Court of Civil Appeals.)

This construction of the statutes follows the Tarry case; the majority opinion herein fails to recognize and to give effect to the wording of the statute.

With reference to the question of public interest, this Court said in Tarry:

"It may reasonably be said that since the Commission has found in this case that (1) the purchaser is financially able and capable of maintaining the service authorized; (2) the equipment proposed to be used by him meets all requirements; (3) he agrees to conduct operations in the same manner as theretofore authorized;

(4) the application is made in good faith; and the further fact that the Commission found initially that 'convenience and necessity' required this service, the public interest has been sufficiently considered".

The Court then held, primarily on the basis of long standing departmental construction, that the issue of public convenience and necessity was not involved in the case.

This Court has now imported into sale approval cases—by the back door, so to speak—the rejected issue of public convenience and necessity under the guise or appellation of "dormancy". This is accomplished by bringing into play a purely permissive and unconnected provision of the Motor Carrier Act, namely, Article 911b, § 12(b). The argument is made that Ryder has allowed its certificates to become dormant with the result that its competitors have expanded their facilities so there is no further need (public convenience and necessity) for Ryder to continue operations. And it is argued that to permit Ryder to resume operations under a supposedly dormant certificate would amount to the establishment of a "new service" under the holding of Railroad Commission of Texas v. Jackson, 157 Tex. 32, 299 S.W.2d 266 (1957).

Article 911b, § 12(b) is a purely permissive statute and was intended by the Legislature to vest in the Railroad Commission a discretionary power to be exercised by it in the interest of a proper control of the motor carriers of this state. This section reads as follows:

"The Commission at any time after hearing, had, upon notice to the holder of any certificate or permit and after opportunity given such holder to be heard, *may* by its order revoke, suspend or amend any certificate or permit issued under the provisions of this Act, where in such hearing the Commission shall find that such certificate or permit holder has discontinued operation or has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or has violated the terms of said certificate or permit; provided, that the holder of such certificate or permit shall have the right of appeal as provided in this Act." (Emphasis mine)

Under this section, when the Commission finds that a certificate holder has discontinued operation, etc., it *may* revoke, suspend or amend a certificate. The provisions of the section do not require the Commission to revoke a certificate even if the holder thereof has discontinued operation. I take it, then, that if the Commission had held a hearing and found that the holder of the certificate had discontinued operations, it would not necessarily be required to cancel the certificate. As pointed out by the Court of Civil Appeals, the Attorney General has so ruled. It would follow that under Article 911b, § 12(b), as written, no court would be authorized to compel the cancellation of a certificate by the Commission. It seems that under any well considered form of motor carrier regulation, the administrative authority after holding a hearing should have the discretionary power to determine whether a certificate should be cancelled outright or whether the holder thereof should be given a reasonable opportunity to bring his service up to the standard contemplated by the certificate, or take some similar action. The statute provides for administrative and not judicial regulation. A scheme of statutory regulation without an administrative authority proved unsatisfactory and ineffective many years ago. 40 Tex.L.Review 230. When the Legislature says "may" and the permissive term makes sense, there is little excuse for the judiciary to substitute a mandatory construction. However, the Court's opinion, in effect, accomplishes this by holding that when a complaint of dormancy is filed, the Commission *must* hold a hearing and *must* hold such hearing prior to deciding whether or not to exercise its veto power over a proposed sale of a certificate. The premise upon which this construction is based is prejudice to Ryder's competitors, —that the non-use or restricted use of the

Ryder certificates has caused Ryder's competitors to increase the scope of their operations so that there is no longer any need (public convenience and necessity) for Ryder to operate in the area which has now been occupied by its competitors. Thus, convenience and necessity come in the back door, and it is argued that Railroad Commission v. Jackson, 157 Tex. 32, 299 S.W.2d 266 (1957), supports this theory. In *Jackson*, there was no question raised as to the supposed dormancy of the certificates involved. The Railroad Commission under its authority to regulate motor carriers found that a combination of certificates would bring into existence a "new service" and that as to such new service, there had never been a showing of public convenience and necessity. This Court supported the Commission's view. However, in the instant case, the Court's action is contrary to the long established practice of the Commission. The Ryder certificates are supported by a finding of public convenience and necessity and consequently, in my opinion, this case should be ruled by Tarry Moving & Storage Company v. Railroad Commission, 367 S.W.2d 322 (Tex.Sup. 1963).

The authority to cancel certificates for non-use or upon other statutory grounds is to be exercised in behalf of the public welfare at the discretion of the Commission. It should not be converted into a delaying device for the benefit of any particular group of competitors. It would indeed be an idle thing to require the Commission to hold a hearing which it had refused to hold when for some reason of administrative policy, it had decided not to cancel a certificate upon the grounds set forth in the complaint. This, for the reason that the decision to cancel or not to cancel is within the discretionary powers of the Commission under the statute.

This new idea of making it mandatory for the Commission to hold a dormancy hearing prior to or along with the hearing relating to the requested approval of the sale of a certificate is not only unsupported by statute but as above indicated is contrary to a departmental construction of long standing duration. As pointed out by the Court of Civil Appeals, Mr. Horace Soule, an examiner for the Railroad Commission for a period of almost twenty-five years testified that the Commission had never adopted or followed any theory of dormancy in connection with a hearing involving the approval or non-approval of the sale of a certificate. This was competent evidence of departmental construction. Tarry Moving & Storage Company v. Railroad Commission, 367 S.W.2d 322 (Tex.Sup.1963).

It further seems to me that in *Tarry*, this Court noted the distinction between the practice of the Interstate Commerce Commission under the Acts of Congress and the Texas Railroad Commission under Article 911b with respect to dormancy or material change in operating conditions as to competition and traffic in the territory served by competing truck lines. The practice of the Texas Commission differs quite naturally from that of the Interstate Commerce Commission and should remain different until changed by the Legislature. Administrative practices should present as few possibilities for harassment and delay as possible and still serve the public good. I would not add the gloss or interlineation to Article 911b, § 12(b) as the Court has done in its opinion and disturb a departmental practice of thirty-five years. If the Motor Carrier Act is not operating properly as it is written, it is the prerogative and duty of the Legislature to change it and not the courts.

What disturbs me most about the Court's opinion is the opportunity for delaying tactics which it will afford. I realize that this certificate sale is hardly comparable to the merger between the New York Central and the Pennsylvania Railroad, but nevertheless, any proposal that goes before the Interstate Commerce Commission moves with the speed and alacrity of a moribund glacier. Heretofore in Texas, the transfer

of certificates has been accomplished with a minimum of delay in all but exceptional cases. The type of evidence that would be adduced upon a dormancy hearing as envisioned by petitioners would be the same as that applicable to a convenience and necessity hearing with public witnesses, etc. We are all acquainted with these voluminous records. I would not incumber a sale where no new service is involved with all the possibility of delay that would be entailed by what really amounts to a public convenience and necessity hearing.

Finally, I would also mention that Mr. Soule raised the question of why the petitioners never sought action from the Commission because of dormancy until the proposal to transfer the certificates from one Ryder pocket to another came along. This inaction transpired although petitioners had operated for years and were expanding their facilities (so they say), knowing all the time that the Ryder certificates were outstanding. Can it be that one carrier may ignore an outstanding certificate and expend his operations and thus secure some sort of a vested right that calls for judicial protection?

The majority opinion cites as authority for its holding the case of T.C.S. Motor Freight Lines v. Vanway Express Co., 148 S.W.2d 899 (Tex.Civ.App.1941, writ dism'd, jdgmt. cor.). That case has no relevance here. There the Commission on April 9, 1935 after hearing ordered two certificates of convenience and necessity cancelled for failure of the operators to remit C.O.D. collections to shippers. This order was held in abeyance until the completion of certain litigation which was terminated by a judgment rendered on September 24, 1935. This judgment necessarily sustained as valid the cancellation order of April 9, 1935 and thereafter, on October 4, 1938, the Commission again determined that the certificates were no longer in force. (148 S.W.2d 902.) Therefore, when the application for transfer of such certificates was filed on May 26, 1939 and approved by the Commission on May 29, 1939, there were no certificates in existence to transfer. The previous orders entered after hearing which cancelled the certificates had long since become final. We have no such facts in the case at bar.

In my opinion, the authorities cited by the Court of Civil Appeals fully support its decision and I would affirm the judgment of that court. Accordingly, I respectfully dissent from this Court's order reversing the judgment of the Court of Civil Appeals.

SMITH, NORVELL and HAMILTON, JJ., join in this dissent.